W. C. De Lashmutt and W. L. De Lashmutt v. The Chicago, Burlington & Quincy Railroad Company and The Chicago, Burlington & Quincy Railway Company, Appellants.

**Railroads:** OBSTRUCTION OF SURFACE WATER: JOINT LIABILITY OF OWNER AND LESSEE. It is the duty of a railroad company to construct and maintain a bridge over a stream or ditch constructed for the drainage of surface water so as not to obstruct the passage of water therein, and it is liable in damages to a land owner resulting from failure to do so; and the same duty and liability rests upon a lessee of the railroad; and, as both the lessor and lessee are liable for the proper construction and maintenance of a bridge they may be joined as defendants in the same action.

1

**Same:** CONSTRUCTION AND MAINTENANCE OF BRIDGES: REASONABLE CARE. It is the duty of a railroad company or its lessee to exercise reasonable care in constructing and maintaining bridges that will permit the free flow of the volume of water that may be reasonably expected to occasionally occur from unusual rainfall, and the instruction in this case states the correct rule.

2

**Same:** CONCURRENT NEGLIGENCE, A railroad company is liable to a

land owner for the negligent construction of a bridge so as to obstruct the free passage of surface water flowing thereunder, although a ditch for carrying the water may also have been negligently constructed and may have contributed to the injury; the land owner not being responsible in any manner for the construction of the ditch.

**Same:** INSTRUCTION. In this action it appeared that the embankment of the ditch gave way and permitted the water to flow over plaintiff's land. The court instructed that if the break in the embankment was caused by the faulty and defective construction of the drainage ditch, or by the faulty and defective construction of the embankment, or the careless and improper manner in caring for and maintaining the ditch or embankment, then and in either event it can not be said that the insufficiency of the water way at the bridge was the direct and proximate cause of the breaking of the embankment and plaintiff could not recover. *Held,* that the instruction sufficiently advised the jury that the railroad company was not liable if the break in the embankment was caused by the negligent construction of the ditch.

**Same:** MEASURE OF DAMAGES. The instruction that plaintiff was entitled to the reasonable market value of the crops destroyed by the flooding of his land, under the facts and circumstances shown, was proper.

**Pleading:** AMENDMENT: DAMAGES. The plaintiff in an action for damages caused by the flooding of his land may amend his petition before verdict so as to increase the amount of damages claimed.

**Removal of causes.** Where the federal court has determined that a cause is not removable from the state court and remands it the defendant is not entitled to a second order of removal, and therefore can not insist upon the postponement of the trial in order to prepare a petition for removal.

**Appeal:** ABSTRACTS: AMENDMENT. Where appellant's original abstract did not contain the record, and it did not appear until the filing of appellant's argument that a part of the record containing the petition for removal of the cause and the orders with respect thereto would be necessary to a solution of the question presented on appeal, the appellee could amend his abstract by embodying therein the proceedings and orders for removal.

*Appeal from Mills District Court.*—HON. N. W. MACY, Judge.

FRIDAY, MAY 13, 1910.

SUIT to recover damages alleged to have been caused by an insufficient waterway under one of appellants' bridges. There was a verdict and judgment for the plaintiffs. The defendants appeal. *Affirmed.*

*W. S. Lewis* and *W. E. Mitchell,* for appellants.

*C. E. Dean, Genung & Genung,* and *John Y. Stone,* for appellees.

SHERWIN, J.—In 1907 the plaintiffs, as partners, were engaged in farming a large tract of land, and they were damaged by water which passed onto a part of said land through a break in the west levee of the Pony Creek ditch. The Chicago, Burlington & Quincy Railroad Company is the owner of a north and south road that crosses the ditch in question on a steel girder bridge about sixty-six feet in length; the distance between the banks of the ditch at that point being fifty feet or more. The steel girders are about six and one-half feet wide, and at the time in question they extended below the top of the ditch levees from two to three feet. Where the defendants' road crosses it, the ditch is constructed practically east and west, but about a half a mile east of said point the ditch curves and runs almost directly north for some distance. In the évening of the 14th of July, 1907, there was a rainfall of three or three and one-half inches in that locality. The water filled the ditch so full that it overflowed the levees on both sides in many places, and broke through the west levee just north of the curve in the ditch of which we have spoken, doing the damage for which plaintiffs ask a recovery. The plaintiffs claim that the break in the levee was caused by the defendants' obstruction of the ditch with its bridge.

The question of a misjoinder of parties defendant was properly raised in the trial court, and both defendants now insist that they were improperly joined. While the Chicago, Burlington & Quincy Railroad Company was the owner of the road, it leased the same to the Chicago, Burlington & Quincy Railway Company in 1901, and the latter company operated it until the 30th day of June, 1907, when the lease was canceled· and the possession and operation thereof was surrendered to the former company. It is therefore undisputed that on the 14th day of July, 1907, the railway company was not in possession of or operating the road, and based upon such fact the railway company contends that it is not liable for plaintiff's loss. The railroad company urges that it is not liable for the reason that the bridge in question was constructed and, until the surrender of its lease, was maintained by the railway company, and the railroad company had had no notice that it was an obstruction to the flow of water in the ditch. These three contentions of the appellants may properly be disposed of together.

Code, section 2039, provides as follows: "All the duties and liabilities imposed by law upon corporations owning or operating railways shall apply to all lessees or

1. RAILROADS: obstruction of surface water: joint liability of owner and lessee.

other persons owning or operating such railways as fully as if they were expressly named herein, and any action which may be brought or penalty enforced against any such corporation by virtue of any provisions of law may be brought or enforced against such lessees or other persons." It was the primary duty of the owner of the road to construct and maintain over the ditch a bridge that would not obstruct the passage of water, and, if it failed in either respect, it would be liable for damages occasioned by such failure. Hence, if the defendant railway company, as lessee, so constructed the bridge in question, or so maintained it, as to prevent the free flow

of water down the ditch, it is liable under section 2039. The evidence is overwhelming that the girders of the bridge were so low that, when the ditch was well filled, they would catch the floating debris and dam the ditch for some distance east of the bridge. Their obstruction of the passage of the water also caused sediment to settle in the bottom of the ditch, thereby raising the same and correspondingly lessening the depth of channel. The bottom of the ditch at the bridge and east thereof had thus been raised long before the railway company surrendered its lease, and there seems no escape from the conclusion that it is liable under the statute.

As we have heretofore said, it was the duty of the owner of the road to construct and maintain bridges that would not obstruct the passage of water, either in a natural water course, or in a ditch authorized by law. The question then arises whether the leasing of the road, its properties, and its operation, relieves the owning company from liability for the faulty construction of bridges by its lessees, or from liability for the negligent maintenance of the same.

The appellant railroad company contends that since the statute (section 2066) authorized the lease of its road it is not liable for the negligent act of its lessee. But with this contention we can not agree. An early case deciding the question before us is *Washington, Alexandria & Georgetown Railroad Company v. Catherine Brown,* 17 Wall. 445 (21 L. Ed. 675), wherein Mr. Justice Davis, speaking for the court, said: "It is the accepted doctrine in this country that a railroad corporation can not escape the performance of any duty or obligation imposed by its charter or the general laws of the state by a voluntary surrender of its road into the hands of lessees. . . . The operation of the road by the lessees does not change the relations of the original company to the public." This rule seems to obtain generally in this country. See cases cited in

5 U. S. Dig. section 121. In 20 Am. & Eng. R. Cas. Ann. 847, the rule is laid down as follows: "A railroad company which has leased its road, cars, and engines, and allows the lessee company to operate the same, is liable to third persons or the public for the carelessness and negligence of the lessee and for defects in the construction and maintenance of the road and its equipment, unless there is a statutory provision to the contrary." A large number of cases are there cited in support of the rule thus stated, and, so far as we have examined them, they do support it. Some of the cases go to the length of holding that the lessor road is liable for injury to passengers and employees, but we need not go so far in this case. It seems to be the almost universal holding that the lessor corporation is liable for a breach of duty which it owed to the public, whether it is or is not liable for the omission of duties not falling within this classification. And it is also generally held, we think, that even where the statute authorizes the lease of a road, but contains no clause exempting the lessor from liability, the lessor still remains liable for an injury resulting from the negligent omission of a duty owed by it to the public, such as the proper construction and maintenance of its road, etc. *Lee v. Southern Pac. R. R. Co.,* 116 Cal. 97 (47 Pac. 932, 38 L. R. A. 71, 58 Am. St. Rep. 140); *Harden v. Railroad Co.,* 129 N. C. 354 (40 S. E. 184, 55 L. R. A. 784, 85 Am. St. Rep. 747), and authorities there cited. Our statute, while permitting a lease of the road, does not discharge the lessor company from any of its corporate liabilities. It merely imposes a liability on the lessee company while operating it. See *Bower v. Railway Co.,* 42 Iowa, 546. The lessor and lessee both being liable for the proper construction and maintenance of the bridge, there is a joint liability. *Bower v. Railroad Co., supra; Railroad Co. v. Crane,* 113 U. S. 424, 5 Sup. Ct. 578, 28 L. Ed. 1064.

In the fourth instruction the jury was told that it was the duty of appellants to "provide passageways for the water reasonably sufficient to allow it to flow through without being diverted from its natural course or being banked up so as to cause damage to the property of another." It was further said, in the same instruction: "It must anticipate and make provision for such floods as may occur in the ordinary course of nature. It must also foresee and provide for such unusual storms as may occasionally occur, whether they are called ordinary or extraordinary; but a railroad company in building and constructing its road, bridges, and culverts is not bound to provide for unprecedented floods, nor is it guilty of negligence in failing to provide for a flood which is not only extraordinary, but unprecedented, and could not reasonably have been foreseen." This instruction does not in our opinion place a greater burden of care on the railroad company than the law requires. It means simply that reasonable care shall be exercised to provide bridges that will permit the free flow of the volume of water that may. reasonably be expected at times, and such is undoubtedly the rule. *Houghtaling v. Railroad Co.,* 117 Iowa, 540; *Vyse v. Railroad Co.,* 126 Iowa, 90; *Blunck v. Railroad Co.,* 142 Iowa, 146. In requiring the railroad company to foresee and provide for such unusual storms "as may occasionally occur," the instruction required no higher degree of care than would be exercised by a reasonably careful man, and the meaning of the language was so carefully circumscribed by that part of the instruction relating to extraordinary and unprecedented floods that the jury could not have misunderstood its scope.

In the sixth instruction the court told the jury that if it found that the flood of July 14 was not extraordinary and unprecedented, but did find that the bridge in question had not sufficient water space thereunder to ac-

2 SAME: construction and maintenance of bridges: reasonable care.

commodate the flow of water in said ditch at all times
except in times of extraordinary and un-
precedented floods, it would be justified in
finding the defendants guilty of negligence

3. SAME:
   concurrent
   negligence.

substantially as charged. This instruction is complained
of because it made no mention of the defense that the
overflow in question was caused by the defective plan and
construction of the ditch. The evidence would not have
warranted or sustained a finding that the bridge was not
itself an obstruction to the free flow of the water that
might reasonably be expected to pass through the ditch
at times, and conceding that there was evidence justifying
the submission of the question of the negligent plan and
construction thereof, the instruction was right, because
the plaintiffs were not to blame for the faults of the ditch,
and if the negligence of the appellants concurred with the
negligence of the builders of the ditch, they were still
liable for damages. *Vyse v. Railroad Co., supra; Lang-
hammer v. City,* 99 Iowa, 295.

But, aside from the above consideration, the jury was
told in the same instruction, in substance, that the question
of the appellants' liability depended upon its determina-
tion of the other questions thereinafter sub-
mitted to it, and in the seventh instruction

4. SAME:
   instruction.

this language was used: "If you find that the break in
the levee was caused by the faulty and defective construc-
tion of the drainage ditch, or by the faulty and defective
construction of the levee in question, or by the careless
and improper manner in caring for and maintaining the
said ditch or levee, then, in either of such events, it can
not be said that the insufficiency of the waterway at the
bridge in question was the direct and proximate cause of
the breaking of the levee at the point complained of, and
in that event the plaintiffs can not recover, and your ver-
dict should be for the defendants." The same thought
was again embodied in the eighth and ninth instructions

with so much force and clearness that the jury could not have misunderstood the matter.

Instructions six, seven, eight, and nine are not, in our judgment, so misleading and inconsistent as to warrant criticism. We think they presented material issues in a plain and concise manner.

There is much evidence tending to show that the plaintiff's injury was caused by the condition of the appellants' bridge, and that the flood in question was not an

5. SAME: measure of damages. extraordinary or unprecedented one. The plaintiffs asked for damages to their growing crops of corn and hay, and the court instructed that they were entitled to their fair and reasonable market value as shown by all the facts and circumstances. The instruction gave the correct rule for this case. *Blunck v. Railroad Co., supra; Harvey v. Railroad Co.,* 129 Iowa, 465; Sutherland on Damages, sections 1023-1049; *Jefferis v. Railroad Co.,* 147 Iowa, 124. There was no error, therefore, in receiving testimony as to value of such crops.

Plaintiffs were permitted to amend before verdict increasing the amount of their claim. There was no error in the ruling. Nor was there error in not requiring the plaintiffs to elect which of the defendants they would pursue, nor in overruling the railroad company's motion to dismiss. Both of these points are covered by the first division of this opinion.

The original petition was in two counts. The first count asked for $1,920 damages, and the second, which was based on the same facts, asked for $1,920 actual damages, and for double damages in the sum of

6. PLEADING: amendment: damages. $3,840. After the evidence was practically all in, the plaintiffs amended the prayer of the second count by asking judgment for $2,642 actual damages, withdrawing all other prayers and dismissing the first count of their petition. The defendant railroad company thereupon filed a motion to strike this amend-

ment, as we have already said, and in connection therewith, and subject thereto, it also asked that the trial be postponed "until such time as the defendant . . . . may prepare a petition for removal and bond therefor," asking that the cause be removed to the federal court of Council Bluffs, Iowa. The court refused to grant the time asked, and the appellant railroad company complains thereof.

The original petition was filed on the 26th day of March, 1908, and on the 14th day of April, 1908, the railroad company filed its petition and bond asking an

7. Removal of Causes.

order of removal from the district court of Iowa to the federal court of Iowa. This petition was based on the allegation that the defendant was a citizen of the state of Illinois, and that it was improperly joined with the railway company. The case was ordered removed to the Circuit Court of the United States, and was thereafter duly taken to said court, where, after a hearing, it was remanded to the district court of Iowa. There was thus an adjudication by a court with jurisdiction that the case was not removable to the federal court, notwithstanding the amount of plaintiff's claim, and hence the appellant railroad company had no right to a second order of removal nor to a postponement of the trial for the purpose of petitioning therefor.

The proceedings for a removal to the federal court and the orders made therein are embodied in an amendment to the appellee's additional abstract. This amend-

8. Appeal: abstracts: amendment.

ment the appellant moves to strike. The motion is overruled. The original abstract did not present the record, and not until appellants' argument was filed did it appear to the appellee that the record would be necessary to a full understanding of the situation. The petition for removal and the orders removing the case and remanding it to the district court are part of the record of the district court which may properly be brought before this court. The verdict

and judgment have ample support in the evidence, and we find no error for which there should be a reversal.

The judgment is therefore *affirmed.*