W. M. ESTES, Appellee, v. CHICAGO, BURLINGTON & QUINCY RAILROAD CO., and CHICAGO, BURLINGTON & QUINCY RAILWAY CO., Appellants.

Jurors: CHALLENGE: DISCRETION. Where the record did not show whether a juror objected to remained upon the panel, or whether the objecting party had exhausted all his peremptory challenges, there was no such showing of such abuse of discretion in overruling a challenge as would justify a reversal of the case.

Injury to real property: ASSIGNMENT OF CAUSE OF ACTION: STATUTE OF FRAUDS. An oral assignment of a cause of action for injury to land may be by parol; and where the plaintiff joined with his own claim those of others for a similar injury, there was no error in allowing proof of the oral assignments, although the petition did not state the character of the assignment.

Same: EVIDENCE. In an action for injury to land by reason of the negligent construction of a railway bridge, thus causing the water to dam up and flood plaintiff's land, evidence that it was customary for employees of the railway company to examine the bridge following a storm, was admissible, both for the purpose of showing defendant's knowledge of the bridge and as indicating that it needed attention after a storm.

Same: A witness who had established his familiarity with a watercourse and the surrounding lands was competent to state whether a bank of dirt was thrown upon the land when a levee was broken, or was sediment thrown up after the levee broke because of the dead water, though in the nature of an opinion, on the ground of his inability to reproduce the scene as it appeared to him. In the instant case the witness was qualified to give his opinion, although not technically an expert.

**Drainage:** OBSTRUCTION OF SURFACE WATERS: INSTRUCTIONS. A railway company is charged with the duty of providing a reasonably sufficient passageway for the surface water flowing across its right of way, so as not to divert it from its natural course; and it must anticipate such floods as may ordinarily occur as well as unusual storms, but need not provide against unprecedented floods which could not reasonably have been anticipated.

**New trial:** IMPROPER ARGUMENT: REVIEW. Where alleged improper argument to the jury is made a ground for new trial, and appears in the record on appeal simply by the testimony of part of the jurors, with no finding by the court as to what counsel in fact said, the question is not reviewable.

*Appeal from Mills District Court.*—HON. O. D. WHEELER, Judge.

SATURDAY, APRIL 12, 1913.

ACTION at law to recover damages for the negligent construction and maintenance of a railway bridge, causing the water in a drainage district to overflow the levees of the ditch and to injure and destroy plaintiff's property. Defendants' answer was a general denial, and it also pleaded that the overflow was due to an unprecedented flood; that the ditch was negligently and unskillfully constructed; that it had filled up with dirt and sediment; and that the authorities, instead of cleaning out the ditch, increased the height of the levees. It also pleaded a prescriptive right to use and maintain the bridge, as it was before the storm, and other defenses, which need not be noticed at this time. Upon the issues joined, the case was tried to a jury, resulting in a verdict and judgment for plaintiff in the sum of $3,133.32, and defendants appeal.—*Affirmed.*

*H. J. Nelson, W. S. Lewis* and *Tinley & Mitchell,* for appellants.

*John Y. Stone, C. E. Dean* and *Genung & Genung,* for appellee.

DEEMER, J.—The damages, which plaintiff seeks to recover, were due to the same storm as caused the injuries complained of in *De Lashmutt v. Railroad Co.,* 148 Iowa, 556, and the negligence charged is the same as was the gravamen of the charge in that case. De Lashmutt's land was on the west of the drainage ditch referred to in the opinion cited, while plaintiff's land is east of the ditch. Aside from the question of proximate cause, the case referred to settles the question as to the sufficiency of the testimony to take the case to the jury upon the issue of defendant's negligence; and as to its duty and liability in the premises and although it is argued, on this appeal, that there was not sufficient evidence of defendant's negligence to take the case to a jury, and that defendant is not liable for the overflow of the ditch, and that the flood was unprecedented in character, these matters must be considered as foreclosed by the opinion in the *De Lashmutt* case. It is further argued that the overflow of the creek and the damage to plaintiff's crops is not shown to have been the proximate cause of plaintiff's injury. As in the *De Lashmutt* case, we think this was a fair question for the jury; the testimony being sufficient to carry the issue to that body. We shall not set out the testimony, nor refer, at length, to the facts, for enough of these are set out in the former opinion to indicate the nature of the controversy.

I.   Complaint is made of the overruling of a challenge to a juror for cause. The record does not show whether this juror remained upon the panel or whether defendants exhausted all their peremptory challenges; and, while the challenge might well have been sustained, and doubtless the juror should have been excused, yet no such a showing is made as would justify a reversal. *Harris v. Moore,* 134 Iowa, 704; *Haggard v. Petterson,* 107 Iowa, 417.

1. JURORS: challenge: discretion.

II.   Plaintiff joined with his own claim, those of many others who claimed to have suffered from the same flood,

and alleged that he was an assignee of these claims. The petition did not allege whether these assignments were in writing or in parol; but the proof was confined to oral assignments. As both assignors and assignee testified to such assignments, and as such assignments may be in parol, there was no error here. *Seymour v. Aultman,* 109 Iowa, 297.

2. INJURY TO REAL PROP- ERTY : assign- ment of cause of action : statute of frauds.

III. A witness was permitted, over defendants' objections, to answer this question, as follows: . "Q. Now, you may tell the jury, if you know, whether it was the custom of the railroad men to go down there to that bridge when a freshet or storm had occurred? A. I most generally found them there when there was a storm." We see no error here. Such testimony was admissible to show not only defendants' knowledge of the condition of the bridge, but also to indicate that the bridge itself needed attention after a freshet or storm.

3. SAME : evi- dence.

On re-examination of the same witness, who had testified to débris, dirt, and sediment on or near plaintiff's land, he was asked the following question, to which he made answer as shown: "Q. Mr. Mitchell has asked you with reference to the bar or the drift or the deposit about the bend or below the bend in front of Mr. Estes'; was that bar thrown up on the 14th at the time the levee broke, or was that sediment that was thrown in there because of dead water after the levee broke? A. It was caused from a rush of water passing past the break after the break occurred, and throwed that sediment in there; of course, there was not current enough to carry it away." There was no prejudicial error here. The witness showed his familiarity with the ditch and the adjoining lands; was on the ground during and after the flood and had such knowledge of the situation and of the action of the water that, although his answer was in the nature of a conclusion, it was such an opinion as was permissible because of his inability to repro-

4. SAME.

duce the scene as it appeared to him, so that a jury would understand it. Moreover, he showed such knowledge of the situation as justified his giving an opinion, although he was not, technically, an expert. *Noe v. C., B. & Q. R.*, 76 Iowa, 360; *Koccis v. State,* 56 N. J. Law, 44 (27 Atl. 800); *Rothrock v. City,* 128 Iowa, 252; *State v. Millmeier,* 102 Iowa, 692; *Kelleher v. City of Keokuk,* 60 Iowa, 473; *State v. Rainsbarger,* 71 Iowa, 746. The same rule disposes of another question asked plaintiff while on the witness stand, regarding the effect of a dike constructed at the upper end of the ditch.

Other rulings on the admission of testimony are complained of, which were either entirely correct or without prejudice.

IV. Two instructions asked by defendants were refused, and this is argued as error; and it is also contended that the court erred in giving the eighth and eighteenth paragraphs of its charge.

The first request related to the measure of damages, and the court gave the substance thereof in its charge to the jury. The second had reference to the weight which the jury should give to opinion evidence regarding the value of crops. This, too, was covered in a general way, and defendant has no just ground of complaint.

The eighth and eighteenth instructions read as follows:

(8) In this connection, you are instructed that it is the duty of a railway company, where it crosses a stream, to

5. DRAINAGE: obstruction of surface waters: instructions.

provide passageways for the water of the stream reasonably sufficient to allow it to flow through without being diverted from its natural course, or being banked up so as to cause damage to the property of another. It is required to anticipate and make provision for such floods as may occur in the ordinary course of nature. And it must also foresee and provide for such unusual storms as may occasionally occur, whether they be called ordinary or extraordinary; but a railroad company, in building its roads, bridges, and culverts, is not required to provide for unprecedented floods, nor is it guilty of negligence

in failing to provide for a flood which is not only extraordinary but unprecedented, and which could not have been reasonably foreseen.

(18) It is not claimed under the testimony that the stubs of piling in the waterway beneath said bridge were there on July 14, 1907. The testimony shows that the stubs of piling were removed before that date. The plaintiff, however, claims that said stubs of piling were left in the waterway when the steel girder bridge was constructed, and that they extended above the bottom of the waterway and obstructed the flow of water and caught débris and other deposits, and thereby, in a more or less degree, filled up the ditch at the point in question and filled up the ditch to some extent further up the stream, and in that way materially lessened the sufficiency of the waterway at the defendants' bridge.

Instructions similar, if not identical, were given in the *De Lashmutt* case and held proper. In this connection we here quote, from the record, the following instructions, which, as we think, fully and fairly presented the issues tendered by the defendant. They read:

(21) . . . On the other hand, however, if you find that the overflowing of the levee at the point in question was caused by the faulty and defective construction of the drainage ditch or of the levee in question, or the insufficient capacity of the ditch itself or by the careless and improper manner in caring for and maintaining the said ditch or levees, or from any other reason than the insufficiency of the waterway under said bridge, then and in either of such events it cannot be said that the insufficiency of the waterway, at the bridge, was the direct and proximate cause of the overflowing of the levee at the point complained of, and in that event plaintiff cannot recover.

(22) Or if you find, from the evidence, that above the defendant's bridge and right of way and below the elbow, referred to in the testimony, the fall in the bottom of the ditch, as originally constructed, was slight and considerably less than it was above said elbow, and if you further find from the evidence that the capacity of the passageway for the water at such turn or bend was less than it was above said turn or

bend, and if you further find that by reason of such conditions a volume of comparatively dead water was thereby caused to be accumulated between said bridge and said elbow, and that the pressure or weight of the volume of water moving down from above was thereby thrown against the levee at or near said elbow and the water was thereby caused to undermine or break over said levee at the point complained of, without regard to the insufficiency of the waterway, at said bridge, that will be sufficient to justify you in finding that the insufficiency of the waterway at said bridge was not the direct and proximate cause of the breaking of the levee complained of, and your verdict should be for the defendant.

(23) Or if you find from the evidence that in the construction of the said ditch and levees the water in that vicinity was thereby turned and diverted from its ordinary and natural flow and outlet, and a greater volume of water thereby caused to seek an outlet under the defendants' bridge than had theretofore ordinarily and naturally passed thereunder, and if you further find that because of such increased volume of water, and the additional pressure or weight thereof, the levee at the point in qestion was caused to be undermined and broken through, that will be sufficient to justify you in finding that such additional volume of water, so diverted from its ordinary and natural channel, was the direct and proximate cause of the breaking of the levee at the point in question, and in such event plaintiff cannot recover and your verdict should be for the defendants.

The trial court did not err either in the instructions given, or in refusing to give those asked.

V. Lastly, complaint is made of the closing argument of one of plaintiff's counsel. This was attempted to be shown by the testimony of some of the jurors and not by bill of exceptions or certificate of the judge. Conceding that we may consider the matter at all, it appears that counsel's comment was upon some of the witnesses for the defense, and it distinctly appears that the objectionable remarks were heard by but one or two of the jury, that they were not the subject of comment in the jury room, and that they were not objected to by defendants'

6. NEW TRIAL: improper argument: review.

counsel.   There was, as we think, no such misconduct shown as would justify a reversal of the case.   The trial court did not make ·any finding as to what was said by counsel, but, made it òf record, that whatever the language, it was nonprejudicial.   We may as well plant this division of the opinion squarely upon the ground that no such record was made as will authorize consideration of this ground of the motion for a new trial.   *Ricker v. Davis,* (Iowa) 139 N. W. 1110, and cases cited.

Finding no prejudicial error in the record, the judgment must be, and it is, *Affirmed.*