D. S. PLEAK, Appellee, v. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellant.

**RAILROADS: Right of Way—Insufficient Bridges for Drainage.** Evi-
1 dence reviewed, and held sufficient to sustain a verdict for damages ·
to crops, because of insufficient openings in a railway right of way.

**DAMAGES: Certainty—Opinion Evidence in re Damage to Crops.** Prin-
2 ciple recognized that the amount of damages to crops by overflow
*after* they are planted and *before* maturity must largely rest in the
opinion of those familiar with conditions.

**DAMAGES: Avoidable Damages—Burden of Proof.** A defendant who
3 seeks to show that a reasonable outlay by plaintiff would have
avoided damages must necessarily show that the effort and outlay
would have been effective.

*Appeal from Pottawattamie District Court.*—THOMAS ARTHUR,
Judge.

JUNE 25, 1921.

ACTION in equity to enjoin the maintenance of a railway embankment across plaintiff's lands, causing surface water to accumulate, and for damages to growing crops. The injunction prayed for was denied, and the plaintiff was awarded damages, and from such award the defendant appeals.—*Affirmed.*

*Sargent & Gamble* and *Saunders & Stuart,* for appellant.

*Preston & Dillinger,* for appellee.

FAVILLE, J.—I. The appellant owns or controls the southwest quarter and the north half of the northwest quarter of Section 24, and the north half of the southeast quarter of Sec-

1. RAILROADS:
right of way:
insufficient
bridges for
drainage.

tion 23, in Township 77, Range 40, Pottawattamie County, Iowa. The right of way of the appellant railway company passes through a portion of the lands of the appellee, its general

course being northeast and southwest. The Nishnabotna River flows in an artificial channel, which passes north and south along the half-section line of Section 23 to the center of said section, when it diverges to the southwest. The old or abandoned channel of the river lies between the new channel and the railway tracks. On the north of the section is a public highway, running east and west, which is known and designated in the record as the "White Pole Road." On the east of Section 23 is a public highway, passing north and south, which is known as the "Carson Road." The lands of the appellee are quite level, and have a natural slope to the west toward the river. A small stream known as "Jim Creek" comes out of the hills to the east over Section 26, south of the lands of the appellee, and passes under a bridge in the railway grade, and flows westward to the river. At the point where the White Pole Road crosses the right of way of appellant, two culverts have been constructed, one on the north side of the public highway and one on the south side. The purpose of these culverts is to permit the water which flows from the east, along and near the course of the White Pole Road, to pass through the railway embankment on either side of the highway, and thence westward along the highway to the river. As originally constructed, the culvert on the north side of this highway was 55 inches long and 2½ feet deep. At the time of the trial, it had filled up until it was about 16 inches in depth. The culvert on the south side of the highway at this point was originally about 4½ feet deep, and at the time of the trial it was about 2½ feet deep, both of said culverts having been partially filled with silt and debris.

The railway tracks of the appellant are laid on an embankment or grade the entire distance across Section 23. At the point where the tracks cross the White Pole Road, the elevation of the embankment is 2 or 3 feet above the natural surface of the ground, and half a mile farther south, it is 7 or 8 feet higher. At a point a little southeast of the center of Section 23, there is a 72-foot bridge in the railway grade. There is no other opening in the right of way between that point and the White Pole Road to the north. The evidence shows that there had previously been an additional opening through the grade of the railway company between the 72-foot bridge and the White Pole Road,

and also another opening or culvert south of said bridge, both of which have been closed.

The particular thing complained of is that the railway embankment, as constructed, interferes with the passage of the surface water in its natural course to the westward across the appellee's land to the river. The evidence shows that the lands lying to the west of the railway right of way, and between it and the river, drain to the river, and are fit for crops. The evidence also tends to show that the lands of the appellee, lying east of the railway, naturally slope toward the river in the same general way as do the lands lying to the west of the railway tracks. It is the contention of the appellee that his lands, lying to the east of the railway tracks, have been inundated and flooded because the railway embankment interferes with the natural flowage of the water from these lands to the river. It is the contention of the appellee that the bridges and culverts through the embankment of the appellant are inadequate and insufficient to provide for the flow of the surface water from the appellee's lands, and that the appellant has permitted the culverts and bridges to become clogged and filled up with silt and debris, so that they are wholly inadequate and insufficient to permit the water that accumulates on the surface of the lands lying east of the railway track to pass through the embankment to the river. It is the contention that the surface waters are held back upon these lands to the east of the railway, and have become stagnant, and have injured and destroyed the crops of the appellee.

There is also evidence to show that the two culverts on the White Pole Road through the railway embankment had been partially filled, and were inadequate to permit the passage of water in that locality from east of the right of way through the embankment, westward to the river, and that water congregated there and passed southward upon appellee's land.

The evidence also showed that the 72-foot span was inadequate to carry the surface water that flowed to that point, and that the bridge over Jim Creek was of insufficient carrying capacity; so that, at times of high water, Jim Creek overflowed its banks, and the water passed upon the lands of the appellee.

There was no sufficient evidence before the court from which

it could fairly be determined to what extent there should be additional openings in said railway embankment, and the trial court properly denied the injunctive relief prayed for.

2. DAMAGES: certainty: opinion evidence in re damages to crops.

The question in the case for our consideration is whether the damages awarded are excessive. It is apparent that damages caused by the destruction of a growing crop are never capable of measurement with exactness. The floods of which complaint is made, and for which damages were awarded, occurred in 1915 and 1917, and at a season of the year after the crop had been planted, and before it was mature. Under such circumstances, the question of the amount of damages must largely be determined from the opinion of those familiar with the conditions and with current values; and at best, no more than a reasonable approximation can be expected. to be arrived at. The appellant offered no evidence whatever on the question of damages.

We have examined the record in respect to this question, and find no reason to disturb the award made by the trial court. Under the evidence, it does not appear to us to be excessive; and if we were disposed to reduce it, there is no sufficient testimony in the record to furnish a basis on which to fix a sum substantially different from that awarded by the trial court. The evidence shows that there was a heavy rainfall during the seasons of 1915 and. 1917, and that the flooding of appellee's land was caused by reason of this excessive fall of rain, and on account of the fact that the openings through appellant's embankment were insufficient to permit the water to escape to its outlet in the river. It is urged that the floods were unprecedented, and that the appellant was not liable for failure to construct openings in its embankment or to clean out existing culverts in anticipation of an unprecedented flood. The evidence is not sufficient to support the contention of the appellant in this regard. The rules of law in respect to the construction of railway embankments, and the liability for damages by reason of overflow caused thereby, have been well established by this court, and it is not necessary for us to review the authorities at length. The law applicable to the case is governed by our rulings in *Cornish v. Chicago, B. & Q. R. Co.*, 49 Iowa. 378; *Van Orsdol v.*

*B., C. R. & N. R. Co.*, 56 Iowa 470; *Stodghill v. Chicago, B. & Q. R. Co.*, 43 Iowa 26; *Drake v. Chicago, R. I. & P. R. Co.*, 63 Iowa 302; *Houghtaling v. Chicago G. W. R. Co.*, 117 Iowa 540; *DeLashmutt v. Chicago, B. & Q. R. Co.*, 148 Iowa 556; *Estes v. Chicago, B. & Q. R. Co.*, 159 Iowa 666; *Thompson v. Illinois Cent. R. Co.*, 177 Iowa 328.

There is nothing in the instant case that brings it outside of the rules announced in these cases.

II.   It is also contended by the appellant that the appellee could have prevented the injury to his premises by the digging of a ditch from the 72-foot bridge westward to the river, at an expense of approximately $200, and the rule of law is invoked that it was the duty of the ap-

<span style="margin">3. DAMAGES: avoidable damages: burden of proof.</span>

pellee to have protected his property in this manner, and thus have reduced the damages.   The facts of this record do not bring it within the rule recognized in *Simpson v. City of Keokuk*, 34 Iowa 568, and *Van Pelt v. City of Davenport*, 42 Iowa 308.   The evidence is wholly insufficient to show, that the construction of such a ditch would have relieved the situation or materially decreased the damages suffered by the appellee.   The injury to the appellee's lands resulted not only from the conditions surrounding this particular bridge, but also because of the condition of the culverts in the embankment and the bridge across Jim Creek.

An examination of the entire record satisfies us that the conclusion of the trial court was correct, and the decree rendered is, therefore,—*Affirmed.*

EVANS, C. J., STEVENS and DE GRAFF, JJ., concur.

ARTHUR, J., took no part.