**Harley KIMMEL and Anna Kimmel, Appellee,**

v.

**IOWA REALTY COMPANY, INC., Appellant.**

No. 68697.

Supreme Court of Iowa.

Oct. 19, 1983.

H. Richard Smith and Richard W. Hoffmann, of Ahlers, Cooney, Dorweiler, Haynie & Smith, Des Moines, for appellant.

John R. Hearn, Des Moines, for appellee.

Considered by REYNOLDSON, C.J., and McCORMICK, McGIVERIN, CARTER, and WOLLE, JJ.

CARTER, Justice.

Defendant, Iowa Realty Company, Inc., appeals from a judgment entered upon a jury verdict awarding plaintiffs Harley Kimmel and Anna Kimmel $50,000 in compensatory damages and $150,000 in punitive damages following the trial of their claims

of breach of fiduciary duty and fraud against defendant. The transactions involved in the litigation relate to a series of real estate transactions between the plaintiffs and others all of which involved Virginia Hart, a representative of Iowa Realty Company, Inc. (hereinafter Iowa Realty) who was acting as an agent of the plaintiffs. Hart was deceased at the time of trial, and although her personal representative was originally included in the action, these claims were subsequently abandoned by plaintiffs. Although no formal order of dismissal appears in the record, no claim against Hart or her estate was tried to the jury in the district court.

Plaintiffs Harley Kimmel and Anna Kimmel are husband and wife. Harley Kimmel's occupation at all times material to this litigation was auto salvage. In seeking to carry out his salvage business at certain locations in the Des Moines area, he encountered difficulties with the local zoning authorities. In April of 1977, the Kimmels purchased three lots on East Grand Avenue for $56,375. One of these lots was vacant; on another was located a residential dwelling; and on the third was located a laundromat, which was leased to John Overton. To secure financing for this purchase the plaintiffs filed articles of incorporation in the name of Harley, Inc., an Iowa corporation which was the grantee in the deed and the mortgagor. The sole purpose of this transaction was to permit the lender to charge a higher rate of interest than was legally permitted on loans to natural persons. No stock was ever issued for the corporation, and all payments involving the purchase, sale, and maintenance of the property went into and out of the plaintiffs' personal bank account. Harley, Inc. was initially a party plaintiff to this action. On the motion of Iowa Realty, asserting that it was not a real party in interest, its claims were dismissed.

The East Grand property was zoned commercial, a circumstance which caused the Kimmels to believe that they could reside in the dwelling and use the remaining property for an auto salvage business. In spite of this belief, several times during 1977, the plaintiffs were informed by the city of Des Moines that the salvage activities were in violation of applicable zoning ordinances affecting the East Grand property. This prompted them to attempt a sale of the property. No claim is made in the present litigation that the defendant misrepresented the zoning status of the East Grand property. Plaintiffs discussed the sale of the East Grand property with Virginia Hart, a sales person with Iowa Realty, and entered into a written listing agreement with Iowa Realty. The listing price was $150,000.

No purchaser was found until April of 1978 when Hart indicated to the plaintiffs that she was personally interested in buying the property. At this point, she began to negotiate with the Kimmels for this purchase. While so doing she was simultaneously negotiating with the Pinters, who had purchased Overton's interest in the laundromat, with respect to obtaining a lease with a substantial prepaid rental. Virginia Hart and an associate, through a trade name known as Virdon's Variety, made an offer to the Kimmels of $112,280 for the Grand Avenue property. That offer was accepted by the Kimmels on April 10, 1978.

Iowa Realty, acting through Hart, agreed to provide its services at the closing of this transaction. While Hart was negotiating for a prepaid lease or option-to-buy with the Pinters, the latter asked to see her evidence of title to the property. Hart then obtained a warranty deed from the Kimmels, although almost a month remained before the scheduled closing of their sale to Virdon's Variety.

Still acting as a sales agent for Iowa Realty, Hart undertook to assist the Kimmels in finding replacement property for the salvage business. The Kimmels testified at the trial that they told Hart that a location was needed "where Harley can do his work." With Hart's help, the Kimmels purchased a residence on East 40th Street on which Iowa Realty was also the selling agent. This transaction took place on July

18, 1978. This property was zoned V–1. Mrs. Kimmel testified at the trial that Hart told her that this zoning classification meant that salvage work could legally be done there.

On July 7, 1978, the Pinters paid $10,000 in advance rent to Hart. This money was held by Iowa Realty pending closing of the Grand Avenue transaction and was eventually all disbursed to the Kimmels either as a credit against Virdon's Variety's debt to the Kimmels on the Grand Avenue property or as a credit against the Kimmels' obligation toward the purchase of the 40th Street property.

Virdon's Variety fell behind in the payments required of it in favor of the Kimmels on the sale of the Grand Avenue property. The Kimmels, believing that the property had been sold under an installment contract with right of forfeiture, served a purported notice of forfeiture. Hart sought injunctive relief against this attempted forfeiture and in the proceedings which followed, the Kimmels discovered that there was in fact no installment contract providing for forfeiture. Hart had obtained a deed absolute in favor of Virdon's Variety secured only by promissory notes of Hart and her father.

When the suit for injunctive relief against forfeiture proceeded to trial, the Kimmels had filed a counterclaim seeking reformation of the deed and promissory notes into an installment contract. This claim for relief was based upon allegations of mutual mistake and fraud on the part of Hart. Following trial to the court, a decree ordering reformation was entered on February 2, 1979.

In January and February of 1979, Harley Kimmel was notified that his salvage activities at the 40th Street property violated city zoning ordinances. Hart resigned from Iowa Realty in March of 1979 and died on October 9, 1979. Prior to her death, she had filed a voluntary bankruptcy petition.

Plaintiffs initiated this action on June 28, 1980, alleging negligence, fraud and breach of fiduciary duty against Iowa Realty based upon Hart's dual relationship in handling the purchase of the Grand Avenue properties for her own benefit. It was alleged that she failed to adequately protect plaintiffs against her own insolvency. The action also claimed fraud and breach of fiduciary responsibility with respect to the handling of the acquisition of the East 40th Street property. As to that transaction, it was claimed that Hart fraudulently represented the zoning status on the property in order to effect the sale thereof.

I. *Claim Preclusion.*

Iowa Realty's first argument on appeal asserts that any claims against it growing out of the Grand Avenue transactions should have been precluded from the jury's consideration in the present case based on the doctrine of claim preclusion. Specifically, the argument made is that plaintiffs litigated the claims of fraud against Virginia Hart growing out of the Grand Avenue sale to Virdon's Variety on their counterclaim seeking reformation of the sale documents and may not now reassert any of said claims against Iowa Realty because the latter stands in privity with Hart.

In *Noel v. Noel,* 334 N.W.2d 146 (Iowa 1983), we considered the doctrines of issue preclusion and claim preclusion and noted the differences with respect thereto. The present issue concerns only claim preclusion. In *Noel* at 148–49, we followed the general import of *Restatement (Second) of Judgments* sections 18, 19, and 27 (1982) in defining claim preclusion. Section 51 of the *Restatement* extends the effects of claim preclusion set forth in sections 18 and 19 to nonparties who are vicariously liable to the injured person.

That section extends the benefits of claim preclusion to vicariously liable nonparties on issues of liability only when the judgment goes against the injured party. In the case *Hart v. Kimmel* upon which Iowa Realty posits its claim preclusion argument, the judgment was in favor of the injured party and granted all of the relief requested. A judgment in favor of the injured party is preclusive as to nonparties

under section 51 only as to the extent of damages. But, even that is not so where "different rules govern the measure of damages in the two actions." *Restatement (Second) of Judgments* § 51(2)(b) (1982). In *Hart v. Kimmel,* the Kimmels' claim as shown by the pleadings was solely for reformation of the contract documents and attorney fees. No claim for money damages was sought in that action. We conclude that on the facts of the present action the judgment in *Hart v. Kimmel* is not preclusive as to the claim presented by plaintiffs against Iowa Realty in the present case.

Additional support for holding that the *Hart v. Kimmel* judgment is not preclusive of plaintiffs' claim in the present case is found in *Restatement (Second) of Judgments* section 26(e) (1982) and Comment *f* following that section. These provisions allow successive actions to redress continuing or recurrent wrongs. *See Bolte v. AITS, Inc.,* 60 Hawaii 58, 587 P.2d 810 (1978). In addition, section 24, Comment *f,* recognizes that changed circumstances afford a basis for concluding that the second action constitutes a different claim from the first. We recognized the latter principle in *Westway Trading Corp. v. River Terminal Corp.,* 314 N.W.2d 398, 401–02 (Iowa 1982). The *Hart v. Kimmel* matter was concluded on a basis that delinquent payments were to be brought up to date. The subsequent losses to plaintiffs on the Grand Avenue properties had not matured at that time.

Moreover, the Kimmels were not shown to have been aware at the time of the *Hart v. Kimmel* litigation of the extent of the alleged fraud and breach of fiduciary duty upon which their claims in the present action are based. We recognized in *City of Chariton v. J.C. Blunk Construction Co.,* 253 Iowa 805, 815, 112 N.W.2d 829, 834 (1962) that such ignorance may temper a strict application of issue or claim preclusion in subsequent litigation. *See also, e.g., Bolter v. AITS, Inc.* We find no merit in Iowa Realty's argument based on claim preclusion.

## II. *Real Party in Interest.*

Iowa Realty also contends that the trial court erred in submitting any claim of plaintiffs growing out of the Grand Avenue transactions because plaintiffs have not been shown to be the real party in interest with respect thereto. This argument is predicated upon the theory that Harley, Inc. is the real party in interest concerning such claims. There is a hint of inconsistency in this contention because prior to trial Harley, Inc. was a party plaintiff whose claim was dismissed on defendant's motion that it was not the real party in interest.

■ Apart from any election which may have been made by Iowa Realty's litigating position as to Harley, Inc.'s interest, we believe the record shows that the Kimmels were entitled to pursue the claims in their own name. This is not a case such as *Cunningham v. Kartridg Pak Co.,* 332 N.W.2d 881 (Iowa 1983), wherein a stockholder of a viable corporation sought to recover some personal loss that paralleled his interest as a stockholder. In the present case, the Kimmels acted to file articles of incorporation on the part of Harley, Inc. solely to meet the demands of a lender seeking to exact the higher rate of interest which could be charged to corporations. They thereafter treated the property as their own. No stock was ever issued in the corporation, no one was involved in its organization other than the Kimmels, no corporate records were maintained, and all funds with respect to the Grand Avenue properties went into and out from Kimmels' personal bank account.

■ In its brief, Iowa Realty tacitly concedes that assignment of a chose of action need not be in writing and may be shown by evidence of intent to make such an assignment. *See, e.g., Estes v. Chicago, Burlington & Quincy Railroad Co.,* 159 Iowa 666, 141 N.W. 49 (1913). In the present case, such intent is clearly shown by the pleadings which the Kimmels caused to be prepared in the present action alleging they were assigning to themselves any claims of Harley, Inc. The purpose of Iowa Rule of Civil Procedure 2, which requires that every

action be prosecuted in the name of the real party in interest is to protect the defendant against a subsequent action by the party actually entitled to recover. *In re Marriage of Stutsman,* 311 N.W.2d 73, 75 (Iowa 1981). No danger of double recovery against Iowa Realty is presented under the present facts. Its claim that the plaintiffs are not the real parties in interest is without merit.

III. *Sufficiency of the Evidence to Sustain the Award of Compensatory Damages.*

Iowa Realty next suggests that the evidence is insufficient to sustain an award of $50,000 in compensatory damages to the Kimmels. This argument assumes to some extent that certain elements of damage which find support in the record are not legally recoverable.

A. *Attorney fees in Pinter v. Harley, Inc.* When the Kimmels ultimately forfeited the contract with Virdon's Variety on the Grand Avenue property, they had to serve notice on the Pinters as parties in possession. The Pinters unsuccessfully sought to enjoin the forfeiture. The plaintiffs sought to recover their attorney fees in defending the Pinters' injunction action as damages in the present case.

The trial court submitted the issue of these attorney fees to the jury under the doctrine of *Turner v. Zip Motors, Inc.,* 245 Iowa 1091, 1097, 65 N.W.2d 427, 431 (1954). In that case it was established that a person who, through the tort of another, has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover compensation from the tortfeasor for expenditures thereby incurred. Iowa Realty urges that the rule in *Turner* does not apply to the present case because the action with the Pinters was not a natural consequence of Hart's tort. In addition, it is urged that Iowa Realty was not timely vouched into the Pinter litigation. We disagree with both of these contentions.

The theory of plaintiffs' claims against Iowa Realty on the Grand Avenue transaction is that Hart, acting for Iowa Realty, committed fraud and breach of a fiduciary duty in not protecting plaintiffs against her known insolvency. Part of the loss to the plaintiffs under their "benefit of the bargain" damage theory was the expense of securing return of the property for which the sale price went unpaid. Their attorney fees in the *Pinter* litigation was a part of this cost, and, as such, was a "natural consequence of the tort" within the rule of *Turner.*

With respect to the timeliness of Kimmels' vouching-in of Iowa Realty in the *Pinter* litigation, this was done approximately two months after that litigation was commenced and forty days prior to trial. Whether a notice to defend is given within a reasonable time depends upon the circumstances in each case. 46 Am.Jur.2d *Judgments* § 560 (1969). We cannot say that the vouching-in was untimely as a matter of law. The Kimmels successfully defended against the Pinters' attempts to enjoin the forfeiture. Iowa Realty makes no argument as to how it was prejudiced as to the amount of attorney fees expended in defending that action as a result of any untimeliness of the notice to defend. The issue of timeliness of the vouching-in was submitted to the jury under proper instruction. We find no error in that procedure. The jury properly could have awarded the attorney fees of $7938 incurred in the *Pinter* litigation as part of plaintiffs' damages in the present case.

B. *Loss on East 40th Street property.* In seeking to place a lid on the amount of compensatory damages which can be awarded on plaintiffs' combined claims against it, Iowa Realty urges that a maximum of $17,000 could have been awarded as damages on the East 40th Street transaction. We disagree. The plaintiffs testified that if the property had been as represented with respect to commercial usage, it would have been worth as much as $55,000. In addition, they testified that in its actual condition it was worth as little as $25,000. As owners of the property, the plaintiffs could properly express

their opinion as to these values. *Fleener v. Board of Supervisors,* 246 N.W.2d 335, 337 (Iowa 1976). Such evidence would sustain a jury finding that the loss on the East 40th Street property was as much as $30,000.

C. *Loss on Grand Avenue properties.* As previously noted, the jury could have found damages of $7938 based on the evidence of plaintiffs' attorney fees in the *Pinter* litigation and up to $30,000 in damages from plaintiffs' loss on the East 40th Street property. This leaves $12,062 to account for in order to sustain the award of $50,000 in compensatory damages which was returned by the jury.

 Upon a showing of fraud or breach of fiduciary duty, the plaintiffs were entitled to the benefit of their bargain in the assessment of damages. *B & B Asphalt Co. v. T.S. McShane Co.,* 242 N.W.2d 279, 285 (Iowa 1976). Our review of the record shows that plaintiffs made a showing under the benefit of the bargain theory of a "bargain price" for the Grand Avenue properties of $112,280 with $33,388 of that sum to be paid by the buyers' assumption of an existing mortgage of approximately $33,390. After the forfeiture of the contract of sale with Virdon's Variety, plaintiffs were forced to pay the then mortgage balance of $36,612 and then resold the property for $70,000. This would support a jury finding that plaintiffs' loss on the transaction was $45,504, less those sums paid on the contract by Virdon's Variety prior to the forfeiture.

The payments for which Virdon's must be credited, as shown by the uncontroverted evidence, are $10,000 representing a transfer to plaintiffs of the Pinter rentals; $150 paid directly by Hart; a $301.63 payment made for Virdon's by Iowa Realty; a $6683 payment from Hart; and a $6500 payment collected by plaintiffs' attorney. The latter sum was probably not net to the plaintiffs. If these sums are totaled, they reduce the amount of plaintiffs' loss by $23,634.63, thereby leaving a potential net loss of $21,869.37 on the Grand Avenue properties, as shown by the evidence.

In making our computations, we have deliberately avoided consideration of the costs of sale on both sales of the Grand Avenue property. We believe the jury could have found the two items would have balanced each other on opposite sides of the damage equation. We also have ignored rental income received by the plaintiffs. To the extent their repossession of the property generated rental income, their timely receipt of the cash sale proceeds (which were not paid) would doubtless have similarly generated some income. The jury could have found that these two items balanced each other in the damage equation. We find support in the evidence for the jury's award of compensatory damages.

### IV. Objections Based on Parol Evidence Rule and Iowa Code § 622.4.

Iowa Realty also asserts reversible error as a result of trial court rulings on objections to evidence. These objections were lodged to testimony of the plaintiffs as to statements made by Virginia Hart concerning the Grand Avenue transaction and were based upon witness incompetency under Iowa Code section 622.4 (1981) and on the parol evidence rule. Objections were also lodged to plaintiffs' testimony concerning statements by Hart relating to the East 40th Street transaction based on the parol evidence rule. We find the trial court properly overruled these objections.

 Iowa Realty's parol evidence objection is based on the premise that the testimony concerning Hart's oral statements was offered to vary the terms of the written agreement for the sale of the respective properties. As to the East 40th Street property, this agreement was between the Kimmels and David Field, the seller of the property. Neither Iowa Realty nor Hart were parties to that agreement and thus may not invoke the parol evidence rule. *Dungy v. Benda,* 251 Iowa 627, 102 N.W.2d 170 (1960). As to the Grand Avenue property, the sales agreement was between the Kimmels and Virdon's Variety. Assuming that Virdon's was Hart's alter ego, she may have been a party to that contract of sale in the capacity of buyer.

But the conversations objected to with respect to the Grand Avenue property were not offered to vary the duties of buyer and seller under the contract of sale, but rather to show a breach of duty by Hart and Iowa Realty in their status of real estate brokers representing the plaintiffs. The duties of Iowa Realty and Hart in the latter capacity were de hors the contract of sale. Such evidence does not violate the parol evidence rule.

 Iowa Realty's objections based on now repealed Iowa Code section 622.4 are based upon Hart's death prior to trial. That objection is personal to (a) the decedent, the decedent's personal representative, heir at law, next of kin, legatee, devisee, or assignee; or (b) a party claiming against the foregoing designated parties. *Bell v. Pierschbacher*, 245 Iowa 436, 446, 62 N.W.2d 784, 790 (1954); *O'Brien v. Biegger*, 233 Iowa 1179, 1210, 11 N.W.2d 412, 426 (1943). Iowa Realty does not fall within this class of persons and therefore the objection was not available to it.

### V. *Iowa Realty's Vicarious Liability.*

Iowa Realty claims it should not be responsible vicariously for Hart's acts on the Grand Avenue properties. It does not make this claim concerning the East 40th Street transaction. We conclude that a jury issue was generated in the present case against Iowa Realty on either a direct or vicarious theory of liability based upon the evidence surrounding the Grand Avenue properties.

 Iowa Realty was the licensed real estate broker which contracted with plaintiffs in the present case to represent them on the sale of the Grand Avenue properties. The corporation was aware at a management level that its sales agent, Hart, was buying the property for herself and thus facing a potential conflict of interest. Additional facts relating to this transaction are discussed in the following division of this opinion concerning exemplary damages. Given the circumstances shown by the evidence, we believe Iowa Realty had a nondelegable fiduciary duty to monitor Hart's activities. The jury could have found on the present record that it did not act properly to discharge that duty. *See, e.g., Mechanicsville Trust & Savings Bank v. Hawkeye-Security Insurance Co.*, 158 N.W.2d 89, 91–92 (Iowa 1968).

### VI. *Liability of Iowa Realty for Exemplary Damages.*

 Iowa Realty's last argument concerns the award of exemplary damages. Subsequent to the trial of this case, we decided *Briner v. Hyslop*, 337 N.W.2d 858 (Iowa 1983). There we affirmed the fact that in this jurisdiction we follow the so-called complicity rule with respect to the award of exemplary damages against a principal because of the actions of an agent. This is the rule articulated in *Restatement (Second) of Torts* section 909 (1979) and mirrored in *Restatement (Second) of Agency* section 217C (1958). Iowa Realty, in its motion for a directed verdict in the district court and in its objections to the court's instructions, cited and relied on the foregoing *Restatement* rules and urged that the evidence which had been presented was insufficient to permit any award of exemplary damages against it. The trial court overruled these contentions and submitted the issue of exemplary damages to the jury. After the jury had returned an award of exemplary damages against Iowa Realty, it again urged the insufficiency of the evidence to support such award in its post-trial motions. These motions were overruled by the trial court.

 Under the *Restatement* rule which we approved in *Briner*, exemplary damages can properly be awarded against a principal because of an act by an agent only if (a) a managerial agent of the principal authorized or ratified the act, (b) the agent himself is shown to have been acting in a managerial capacity, or (c) the principal is shown to have been reckless in retaining an unfit agent. Defendant has properly preserved in the trial court and raised on this appeal the issue of the sufficiency of the evidence to satisfy the foregoing requirements. We

therefore face the task of deciding the sufficiency of plaintiffs' proof according to the rule of the *Restatement*. This requires consideration of both the East 40th Street transaction and Grand Avenue transactions.

As to the East 40th Street transaction, it is plaintiffs' claim that they told the agent, Hart, that they had to have property zoned for auto salvage and that she advised them that the East 40th Street property met this test. Plaintiffs assert that in so doing the agent either deliberately misrepresented the applicable zoning restrictions on the property or deliberately acted with a reckless disregard of the truth. We conclude that when the evidence is viewed in the light most favorable to plaintiffs it sustains their claim that Hart, acting as agent for Iowa Realty, misrepresented the zoning restrictions on the East 40th Street property. We find no evidence, however, that a managerial agent of Iowa Realty authorized or ratified such misrepresentation. Hart herself was not acting in a managerial capacity, and no showing has been made that she was known by Iowa Realty to be an incompetent agent prior to the transactions in question. Plaintiffs' proof therefore fails to establish the elements necessary to render Iowa Realty liable for exemplary damages as a result of Hart's acts in the East 40th Street transaction.

Turning to the Grand Avenue properties, the elements of fraud and self-dealing which plaintiffs assert in support of their claims for exemplary damages on that transaction concern the preparation of the documents of sale by Hart and the failure of Hart or Iowa Realty to protect plaintiffs from Hart's insolvency. As to the first of these claims, the situation concerning Hart taking an absolute deed to the property rather than an installment contract was determined in *Hart v. Kimmel* to have been the result of mutual mistake. This adjudication was consistent with plaintiffs' allegations in that case and was the subject of a consent decree which plaintiffs concede they agreed to. We have held in division I, however, that this circumstance does not create a claim preclusion in the present action as to all elements of the Grand Avenue transaction.

While there was opinion testimony from attorneys and realtors that, given the nature of this transaction, an installment contract with forfeiture clause would have been the most common way of handling the documentation, and would have better served to protect the sellers' interest, we do not think this supports a finding of ratification of fraud at a management level. The initial closing documents (later reformed by court decree) complied with the written offer made by Virdon's Variety and accepted by the Kimmels. If there was fraud in this transaction, it necessarily had to flow from some act by Hart which misled the Kimmels as to the provisions of Virdon's offer. There is no evidence that if this occurred Iowa Realty had knowledge at a management level that the offer which the Kimmels accepted did not in fact comport with the agreement of the parties. Given these circumstances, the preparation of the contract documents provide the Kimmels no basis for claiming exemplary damages in the present case.

 With respect to the alleged failure of Hart or Iowa Realty to protect the plaintiffs against the consequences of Hart's insolvency, the evidence would support a finding that Iowa Realty, acting at a management level, knew that Hart was the principal buyer of this property, was facing a potential conflict of interest in the transaction, and that her personal financial picture was certainly not good. The time when this knowledge was acquired is somewhat uncertain. Some rather unusual arrangements had to be made concerning the share of both Hart and Iowa Realty on the commission from the sale in order to alleviate Hart's financial burdens. Contrary to plaintiffs' assertions, however, the contract was not purely executory when the Iowa Realty management was first contacted by the Kimmels concerning insufficient funds checks given them by Hart. There was at this time a binding contract of sale as a result of the Kimmels' acceptance of the written offer made by Virdon's Variety.

That contract was also in force prior to any knowledge by Iowa Realty of a federal tax lien on Hart's commissions. In *Holcomb v. Hoffschneider,* 297 N.W.2d 210, 213–14 (Iowa 1980), also involving liability of a real estate company for acts of its agent, we held that breach of fiduciary duty, even if technically qualifying as fraud, will not justify exemplary damages unless malicious, deliberate, gross, or wanton. This rule is tempered by our holdings that the determination of malice may involve either actual malice or legal malice. *First National Bank v. One Craig Place, Ltd.,* 303 N.W.2d 688, 699–700 (Iowa 1981); *Feeney v. Scott County,* 290 N.W.2d 885, 892 (Iowa 1980). To establish legal malice, it need only be shown that wrongful or illegal conduct was committed or continued with a reckless disregard of another's rights. *Feeney,* 290 N.W.2d at 892.

Tested by these principles, we conclude that the evidence in the present case falls somewhat short of the culpability level needed to sustain an award of exemplary damages. At best, the evidence shows knowledge by Iowa Realty that Hart was perhaps a risky buyer. There is no showing that it knew she would be unable to complete the transaction. Every indication was that it was Hart's intention to resell this property to the Pinters at the earliest opportunity; a circumstance which could have provided the basis for the payments to the Kimmels which were due in full within one year and four months of the sale to Virdon's Variety. Reviewing the transaction in its entirety, we find that the trial court erred in submitting any issue of exemplary damages to the jury.

In reaching the result which we do, we have considered and rejected plaintiffs' argument that its claim for exemplary damages is based upon direct corporate action rather than the acts of an agent. This distinction and its effect on liability of corporations for exemplary damages under the complicity rule is discussed in detail in Ellis, *Punitive Damages in Iowa Law: A Critical Assessment,* 66 Iowa L.Rev. 1005, 1039–41 (1981). We find it sufficient to state that no acts of Iowa Realty as a corporate entity

have been shown in the present case which satisfy the purposes of exemplary damages which were approved in our *Briner* decision.

In *Muchmore Equipment Inc. v. Grover,* 315 N.W.2d 92, 101 (Iowa 1982), where exemplary damages were improperly included in a judgment, we followed the procedure on appeal of modifying the judgment so as to comport with that which should have been entered and remanding the case to the district court for entry of the proper judgment. We follow that procedure in the present case. The correct judgment should have been in the sum of $50,000 plus costs and interest at the statutory rate from the date of the filing of plaintiffs' petition.

MODIFIED, AFFIRMED, AND REMANDED WITH DIRECTIONS.