J. H. WICKHAM, Appellee, v. F. O. EVANS and THE STORY & CLARK PIANO COMPANY, Appellants.

Bills and notes: BONA FIDE PURCHASERS: FRAUD. In an action to
1    cancel certain notes, given as part consideration for the purchase of a piano, the evidence is reviewed and it is held that

defendant was not a bona fide holder thereof in the usual course of business, and that the same were procured by the fraud of defendant's own agent and are not enforceable in his hands.

**Same:** PAYMENT. The agent of a piano dealer received in part settlement for an instrument a note payable to himself and transferred it to a bank as security for his individual debt. At the same time he fraudulently obtained a mortgage note covering the same indebtedness which he transferred to the company, and the dealer, a general agent for the company, with knowledge that the mortgage note was taken as security, assigned the same to himself. Held, that the fraud was that of the dealer's agent for which the maker of the notes was not responsible and that payment to the agent for the bank, a bona fide purchaser, he having authority to make collections for the company, was a *pro tanto* satisfaction of the obligation to the dealer even though prior to payment he had notice that the dealer held the mortgage note.

**Execution of instruments:** NEGLIGENCE: FRAUD. An ignorant person not skilled in the use or understanding of technical or legal language is not negligent in failing to read all of the terms of an instrument before signing the same, especially where the agent of the holder seeking enforcement deliberately misrepresented its contents.

*Appeal from Polk District Court.*— HON. W. H. MCHENRY, Judge.

SATURDAY, MARCH 9, 1907.

SUIT in equity to cancel certain notes held by defendants, and for the value of a piano, which it is alleged defendants have converted to their own use. Defendants filed a general denial and a counterclaim. The case was tried to the court, resulting in a judgment for plaintiff in the sum of $342.06, and a decree canceling the notes. Defendants appeal.— *Affirmed.*

*Hager & Powell* and *Williamson S. Summers,* for appellants.

*E. A. Johnson* and *George E. Hise,* for appellee.

DEEMER, J.— The Story & Clark Piano Company is a corporation engaged in the manufacture and sale of pianos and other musical instruments in the city of Chicago. De-

1. BILLS AND NOTES: bona fide purchaser: fraud.

fendant Evans was and is its general manager, denominated " General Western Agent," with an office in the city of Des Moines. One Diltz was engaged in the business of selling pianos at the town of Tipton in this State, doing business under the name of the " Diltz Music House."

On or about May 15, 1901, Evans, on behalf of his company, entered into a contract of agency with Diltz, the material facts of which read as follows:

I hereby certify that all pianos which are now or shall hereafter be furnished me by you are to be held upon consignment and for sale for your benefit, and all money, notes, or other property received from the sale of any piano shall belong to you until settlement is made therefor. (2) I will endeavor to sell promptly all instruments you consign to me, and will, as soon as sold, remit to you in cash or approved customers' contracts, which shall always be subject to your approval, with security on the instrument sold. Said contracts to be made on blanks furnished by you, to draw interest at the rate stated thereon, and payment of the same is hereby guarantied by me at maturity, waiving notice or protest. (3) In case of contracts for the payment of the purchase prices of instruments falling due and remaining unpaid, you are hereby authorized at your option to charge the same to my account, principal and interest, together with the same cash premium that you allow me on cash remittances. (4) All instruments taken back from customers, in default of payments on contracts or for other causes, and all new or second-hand instruments taken in exchange for, or in part payment for, instruments consigned to me by you, are to be regarded as goods consigned to me, and to be accounted for in the same manner. (6) The right of instructing as to terms upon which sales are to be made, and the manner of securing deferred payments is reserved to you. . . . (7) Upon your demand, or that of your agent, I will deliver as you may direct, free of charge or

expense of any kind, to you, including return freights, any and all of said goods remaining unsold at the time of said demands, including the original packing cases of the same. (8) All goods I return whether from stock in my hands or from customers for default in payment on contracts sent in by me, are to be passed to my credit at 90 per cent. of invoice to me as agent less return freight, the balance, 10 per cent., being deducted for depreciation and shop wear of goods, and if they are instruments which have been taken in exchange or trade, they are to be credited at their fair cash value [less return freight]. (9) For the purpose of forming a basis upon which my compensation is to be fixed for the sale of said instruments they are to be invoiced to me as agent at prices and terms given me by you, and with prices, terms and values I will account to you for; and I agree that my compensation and commission hereunder shall be such sum or sums as I may sell said instruments for in excess of such invoice as to the instruments, respectively. My commission, as above, will not be available to me in any form until you have received in cash the invoice price, with interest. (10) I will send you statement the 1st day of each month of all instruments remaining on hand unsold, and will give you the names, postoffice addresses, and exact locations of parties who have instruments in their hands unsettled for on that date, and will account to you immediately upon any sale being made. (11) I will make no charge of any kind for services in repairing pianos, making collections, or similar acts, which are for our mutual benefit, unless such charge is agreed upon and authorized by you previous to the rendering of such service. (12) This agency may be terminated at any time by either party, and any stock which I may have on hand will be subject to your order.

C. A. Diltz.

Witness: F. O. Evans.

We hereby accept the above contract of proposal this 15th day of May, 1901.

F. O. Evans,<br>Mgr. Story & Clark Piano Co.

Various pianos were shipped by the defendant company to Diltz under this contract, one of which he sold to plaintiff herein at the agreed price of $350, $100 of which

was represented by an organ which plaintiff delivered to Diltz, and the remainder by three notes — one for $50 due January 1, 1902, another for $100 due January 1, 1903, and a third for $100 due January 1, 1904. The first note was to be treated as a cash payment. After the three notes had been executed and delivered, Diltz insisted upon having security for the two $100 notes, and to this plaintiff at first objected; but, finally, upon Diltz's representation that the paper was nothing but a mortgage upon the piano to secure the $200, the same as he had many times taken, plaintiff consented, and signed the instrument, relying upon Diltz's statement regarding the nature of the instrument. This instrument turned out to be a mortgage note for $300, with an indorsement of the payment of $100 upon the back thereof. This mortgage note Diltz turned over to Evans, the general agent at Des Moines, on or about November 18, 1901. By the terms of this instrument, $100 was paid in cash, and $100 was to be paid on or before October 7, 1903, and the other $100 on or before January 1, 1904. Shortly after Diltz had sent this instrument in to his company he sold or put up as collateral the $100 note, maturing January 1, 1903, to the Cedar County State Bank, at Tipton, Iowa, and indorsed the same in blank. About this same time Diltz transferred the other $100 note to some one; but this upon the trial in the court below was produced by Diltz.

Plaintiff received notice from the bank that it held his note, and that it matured January 1, 1903, and, meeting Diltz at Cedar Rapids, which is not far from Tipton, and at which place Diltz was also engaged in the piano business, he, on or about January 10, 1903, gave him (Diltz) the money wherewith to pay or take up this $100 note. Diltz gave him a receipt for the money, and in due time plaintiff received his note from the Cedar County Bank marked " Paid Febry 10th, 1903, Cedar County State Bank." On or about August 16, 1902, Evans wrote a letter to plaintiff

upon paper, bearing this printed matter on one corner: " Frank O. Evans, General Western Agent. Story & Clark Piano Company, Manufacturers. Des Moines, Iowa," the following: " Mr. Henry Wickham, Lisbon, Iowa — Dear Sir: Since Mr. C. A. Diltz formerly of Tipton has moved to Cedar Rapids it is impossible for him to pay attention to his piano collections. He has turned them over to us in settlement for the pianos. We have your note of $200.00. One hundred dollars due January 1st, 1903, and one hundred Jany 1st, 1904. The note will be held here until payments are made, and you can remit at any time on or before maturity. If you wish to take up the note before maturity, we will discount the interest. Kindly acknowledge the receipt of this letter and oblige. Yours truly, F. O. Evans."

It is well in this connection to note the statement as to the time of the maturity of the notes. The piano was sold under a warranty, and, during the fall of the year 1903, plaintiff notified Evans that the instrument was defective; and in response received a written promise from the agent to make it satisfactory. On January 13, 1904, Evans again wrote plaintiff, saying that they had not sold his note, that they would make the piano satisfactory, and that a representative of the company would call upon him in short time, when he could make a payment of $75 on the note; that the agent would ship the instrument to the factory, and that when returned he, plaintiff, could pay the balance. Wickham paid $75 to the agent, who took the instrument and returned it to the factory. Thereafter plaintiff received the following letter written on the usual letter paper of the General Western Agent: " Des Moines, Iowa, Feb. 12, 1904. Mr. Henry Wickham, Dewitt, Iowa — Dear Sir: We received notice from our Mr. T. McKenna some time since that he had called on you, found the piano somewhat damaged, collected $75.00, and returned the piano to the factory. This $75.00 we applied on your $100.00 note due Jany 1st, 1903, leaving a balance due us of $125.00. Some time last

fall you wrote, asking that the note be sent to Cedar Rapids, and you would straighten this out, but you failed to do so. Your piano is now ready to be returned, and it will be forwarded upon receipt of the $125.00 and interest. Please let us hear from you by return mail, and oblige. Yours very respectfully, F. O. Evans."

Attention is again directed to the description of the $100 note, upon which the credit is said to have been made. That note was the one which plaintiff had already paid to the Cedar County State Bank, and there was no other like it. Thereafter plaintiff demanded the return of his piano, and, as defendant refused to comply with the demand, he commenced this action September 4, 1904, alleging that it was agreed that plaintiff should retain the $25 which he admitted was due upon the last note to insure himself against any expense in putting the piano in condition to comply with the warranty. The trial court rendered judgment for plaintiff for the value of the piano, $350, less the sum of $47.67 due from him to the company. From this statement it will be observed that plaintiff has paid all that he agreed to for the piano save the $25 with interest, and that he has neither organ nor piano. He is therefore entitled to the judgment given him by the trial court unless he is to be held responsible for the defaults and delinquencies of defendant's agent, or by reason of the facts and circumstances should be held liable on the mortgage note for $200 less the credit of $75 which is indorsed thereon. Defendant Evans claims, as we understand it, among other things, that he is an innocent holder of the note and is entitled to recover thereon in his individual behalf. The testimony in this regard is that he as agent sold the mortgage note to himself as an individual; that he advanced the money to his company for the piano and took the note. Diltz was defendant's agent, as will appear from the contract we have set out, and as such he perpetrated or attempted to perpetrate a fraud either upon plaintiff or upon his company. The

mortgage note was obtained from plaintiff by fraud and misrepresentation. This was the fraud of defendant's own agent, and for it the defendant is responsible.

We doubt if Evans purchased this note. It was turned in to the company by its agent Diltz and so received by Evans. He as general agent, says that he transferred it to himself as an individual; but the transaction was manifestly not in the usual course of trade. He simply advanced money for a piano which the company had always regarded as belonging to it or to the plaintiff; and Evans' letters show that he regarded the note as belonging to his company, and not to himself. Manifestly the company could not recover upon this note, nor do we think that Evans can. In his correspondence about the note, Evans shows that he was writing about the $100 note which plaintiff paid, for that was the only one maturing January 1, 1903. No part of the mortgage note had then matured. He collected the $75 as being upon the last $100 note; for the remaining $25 was to be retained by plaintiff to indemnify him against any freight or other charges on the piano. Surely Evans must have known from reports from Diltz, the nature of the original transaction, and that the three separate notes were given. How else could he know of the maturity of the first $100 note? Indeed Diltz, who was a witness, testified that he informed Evans as to the separate notes outstanding, and that they were secured by the mortgage note. Moreover, after the transactions in question, Evans went before the grand jury and had Diltz indicted for embezzlement, and, before the grand jury, testified that Diltz had embezzled money coming into his hands as an agent, either for himself or for the piano company. On January 13, 1904, Evans wrote Wickham that they had not sold his note, that he could make a $75 payment thereon, and that the piano would be repaired. After the $75 had been collected, Evans wrote upon a letter head of the company, "we have applied this upon your $100 note maturing January 1, 1903." Under

these facts it is clear that Evans is not a bona fide holder of the mortgage note in the usual course of business, and it is also clear that this mortgage note was obtained by fraud, and is of no validity except it be in the hands of a bona fide holder.

II. The only other question in the case is, was plaintiff's payment of the first $100 note to Diltz and by Diltz to the Cedar County Bank such as to relieve him from responsibility? Under the contract with Diltz, or by reason of a custom prevailing and recognized by both Evans and the company, Diltz had authority to collect notes taken by him for pianos. The testimony shows that Diltz left this first $100 note with the Cedar County Bank as collateral security for a personal indebtedness to the bank, and that when plaintiff received notice from the bank he went to Diltz at Cedar Rapids, where he at that time resided, and paid Diltz the amount of the note. Diltz took the money to the bank, and secured the release of the collateral, and the note was returned to plaintiff duly canceled. The note was made payable to Diltz, and by him indorsed to the bank. Plaintiff could not in any event have escaped liability to the Cedar County Bank upon this note, and he secured its return from one having authority to collect it. The fraud, if any, was by defendant's agent; and it must be held responsible for that fraud. *Baldwin v. Davis,* 118 Iowa, 38; *Manson v. Simplot,* 119 Iowa, 94; *Mankin v. Mankin,* 91 Iowa, 407. Plaintiff is not to be held liable for the fraud of defendant's agent Diltz in transferring this first $100 note. He had no knowledge of Diltz's lack of authority, and if he had had this knowledge he could not have defended against the note in an action brought by the bank against him. When defendants by the letter of August 16, 1902, notified plaintiff that they held his note they expressly referred to an obligation maturing January 1, 1903, which must have been the first $100 note, for there was none other answering this description. The

*2. SAME: payment.*

note, as we have seen, is the one plaintiff paid, and the one which he now holds. The real question in this case is, who shall lost the $100 paid upon this note, plaintiff or the defendants, through whose agency the fraud was committed? Manifestly there can be but one answer to this question. Defendant is liable for the fraud of its agent. It put him in position to perpetrate this fraud, and plaintiff did nothing that he was not compelled or compellable to do. He paid the note which he gave, and which was a binding obligation directly to defendant's agent and indirectly to the holder of the paper taken, and, we may assume, wrongfully indorsed to the Cedar County Bank. The mortgage note was taken simply as security for the other notes, and the evidence, as we think, shows that defendant Evans knew of that fact. He certainly had notice of such facts as would have put an ordinarily prudent man upon inquiry, and his correspondence indicates that he knew of the entire transaction; that is, as to the manner in which all the notes and papers were procured.

The only fault to be laid at plaintiff's door is the signing of the mortgage note at the request of defendant's agent without knowing more of its contents; but defendant cannot rely upon that fraud and collect the covinous instrument. Evans is not a bona fide holder, and defendants are in no position to take advantage of any negligence on plaintiff's part. Plaintiff is an ignorant man, unskilled in the use or understanding of technical or legal language. The contents of a long printed mortgage note were deliberately misrepresented to him, and we do not think that he was negligent in not stopping to read all its terms. Defendants secured the return of the piano after they knew of Diltz's embezzlements or defalcations, and, as we think, with the deliberate purpose of making him (plaintiff) bear the loss incident thereto. This was a wrong, and a fraud, and the refusal to surrender the instrument upon demand for its return constituted a conver-

3. EXECUTION OF INSTRUMENTS: negligence: fraud.

sion.   Plaintiff was not bound to return the $25, with interest, for he was holding it by agreement to protect himself from freight and other charges.   Appellants' counsel argue the case upon the theory that plaintiff has not paid the first $100 note.   But, as we have seen, he has paid it, and has it in his possession.   They further say that even if he did pay it, he had notice not to do so before he made his payment, and because of that fact must suffer the loss.   Had he secured an unequivocal notice not to pay, it would not have availed him anything, for the Cedar County Bank was entitled to enforce the collection thereof as a holder in due course.   Moreover, defendants cannot enforce the mortgage note against plaintiff, for it was obtained by and through the fraud of their own agent; and as plaintiff has paid the first $100 note, the only one for that installment which he was legally obligated to pay, he has done all that was required of him.   Moreover, the notice given to plaintiff was not that defendants held this mortgage note.   It indicated that it held the two original notes given by plaintiff.   If he has paid these, and received them from one legally holding them, he has done all that may be required of him.   He had no notice before paying that Diltz was not authorized to collect as he had theretofore done.   If he had had such notice, he could, nevertheless, and it was doubtless his duty to, pay the amount to the one who legally held the note.   The entire record impresses us with the fact that defendants are seeking to hold plaintiff responsible for the defalcations of their own agent, and that they secured and are holding the piano with that end in view.

The judgment seems to be right, and it is *affirmed*.