L. H. TURNER, appellee, v. ZIP MOTORS, INC., appellant.

No. 48508.

(Reported in 65 N.W.2d 427)

JULY 26, 1954.

George B. Boland, of Omaha, Nebraska, and J. Leo Connolly, of Council Bluffs, for appellant.

Ross, Johnson, Northrop, Stuart & Tinley, of Council Bluffs, for appellee.

THOMPSON, J.—The instant case is an outgrowth of A. C. Nelsen Auto Sales, Inc. v. Turner, 241 Iowa 927, 44 N.W.2d 36, a replevin action in which the plaintiff, an Omaha automobile sales agency, claimed the right to possession of a Packard car from the defendant, Turner, who is the plaintiff in the action now before us. Turner successfully defended the replevin suit

both in the trial court and this court. He now alleges that the litigation was brought about by the wrongful conversion of the automobile, which was at all times his property, by the defendant, Zip Motors, Inc., acting through its agent, one O'Brien. The trial court, sitting as judge of both the facts and the law, granted Turner a judgment for $600, which it found to be the reasonable value of the attorney fees incurred by Turner in the defense of the replevin suit, and denied him relief for any other items of damage which he asked. No question is made as to the reasonableness of the fees allowed, and Turner has not appealed from the adverse judgment refusing to allow him the other claimed damages. We have, therefore, only the question of the legality of the allowance of the attorney fees.

In this appeal, the defendant-appellant assigns four errors relied upon for reversal. The first is that the court erred in finding Frank O'Brien was a salesman, agent and employee of the defendant at the time of the transaction which brought about the litigation with the Nelsen Auto Sales; the second, that the court was in error in finding the said O'Brien was acting within the apparent scope of his authority in negotiating a purported sale of plaintiff-appellee's automobile to the Nelsen firm; and the third, that the attorney fees incurred in the Nelsen suit were not a proper item of damage and the court erred in holding they were. The fourth assignment is a general one and depends upon the correctness of the rulings on the first three. It need not be separately considered.

I. The first and second assignments will be considered together. The material facts at this point are that the plaintiff, on September 23, 1948, being desirous of selling his Packard car, drove to the place of business of the defendant in Council Bluffs. It is alleged and admitted in the pleadings that defendant was at all material times a corporation whose primary purpose was to "buy, sell, distribute and handle, both at wholesale and retail, motor vehicles of all kinds", together with parts, accessories, gas, oils and other petroleum products; and to service, repair and recondition motor vehicles.

We of course follow the familiar rule that in law actions tried to the court without a jury, the fact findings of the court, if supported by substantial evidence, have the same effect as a

jury verdict and cannot be disturbed upon appeal. Nelsen Auto Sales, Inc. v. Turner, supra, at page 930 of 241 Iowa, and cases cited. Some of the items of testimony hereinafter set out were strongly disputed by the defendant; but it is not our right to weigh the evidence. Since we must follow the trial court in its supported findings of fact, it will avail nothing to discuss or even refer to the defendant's testimony which does no more than deny substantial evidence for plaintiff.

The plaintiff testified when he went to defendant's place of business on September 23, he talked to "the girl at the information desk." He told her he wanted to sell his car. She said the men were busy. He saw a man talking to other apparent customers. After a few minutes this man walked over to him, and the girl at the desk introduced him to plaintiff as O'Brien and told him to go out and appraise plaintiff's car. Either the young woman or O'Brien at this time gave him a card, which appears in evidence as plaintiff's Exhibit I. The card bore the name "Zip Motors Inc." printed across the center. In the upper left-hand corner were the words "Zip for Cars"; in the upper right-hand corner, "Zip for Trucks." In the lower left corner was the address of the company and in the lower right its phone number. In the center, below the name of the company, were the printed words "Ask for" and immediately below these was, in writing, "Frank O'Brien." After plaintiff had been introduced to O'Brien and been handed this card, he and O'Brien went out to look at the automobile. O'Brien said the car would bring $3500, but would not bring that much if it was put on the company's lot. He said he might sell it to an elderly couple in Omaha and told plaintiff to clean it up and bring it back Saturday, the 25th.

On the morning of the 25th, at about 8:30 a.m., plaintiff again drove his car to defendant's place of business. O'Brien was in the office and came out when he saw plaintiff. He said he would tell the people in defendant's office what he was going to do, and he and plaintiff then drove to Omaha. Here O'Brien suggested to plaintiff he wait for him while he called on his supposed prospective customers, and arranged to meet him in about an hour. O'Brien, as it later developed, took the car and

sold it fraudulently to the Nelsen Auto Sales Company and decamped with the money. He has never been located. Plaintiff, after waiting for several hours, reported his loss to the police, who found his car parked, apparently on the Nelsen sales lot or on the street near this company's place of business. They towed it to the police station, where the next day plaintiff took possession of it. This brought about the replevin suit in which the Nelsen Company tried unsuccessfully to regain possession of the automobile, and in which plaintiff incurred the attorney fees for which he was granted judgment against the defendant in the case at bar.

Mrs. Lucille Carmichael testified for plaintiff that she was employed by defendant as a bookkeeper and general office worker at the time plaintiff came to attempt to sell his car. She was also apparently the receptionist, for she says "I talked to people as they came in." When plaintiff came in to see about selling his automobile she referred him to O'Brien, "first salesman on our staff." She says "O'Brien worked for Zip Motors a short time." She says O'Brien was there more than three days, and the company manager, Mundell, told of firing him after this affair. She says O'Brien was there early on Saturday morning (September 25) and told her to tell his wife he had gone to a dentist.

For defendant, Mundell, the manager, denies O'Brien was ever employed as a salesman or in any other capacity by it; and there is other evidence supporting defendant's case. But it will avail nothing to go further into detail concerning it; we think the testimony of the plaintiff and Mrs. Carmichael gives substantial support to the trial court's finding that O'Brien was at the time of the transaction referred to a salesman and agent of the defendant, and its finding must therefore be final on this question of fact. Mrs. Carmichael, the bookkeeper and information clerk or receptionist, says he was employed as a salesman at that time; and plaintiff was given a company card in which O'Brien's name had been filled in in writing so as to make it appear he was in some manner connected with its business. While Mrs. Carmichael was not officially labeled as an "information clerk", the record indicates it was a part of her duty to meet customers as they came in and refer them to the

proper employees or agents of the company. Her desk was an "information desk" so far as the facts of this case are concerned. As we said in Northwestern Mutual Life Ins. Co. v. Steckel, 216 Iowa 1189, 1196, 1197, 250 N.W. 476, 479, "that individual was placed there by the appellee company as the person to whom people coming into the appellee company's home office should turn to ascertain with whom they should conduct their business." There was ample evidence to support the trial court's finding that on September 25, 1948, O'Brien was a salesman, agent and employee of the defendant.

If he was a salesman for defendant, we think further there was substantial evidence he was acting within the apparent scope of his authority in what he did, including the conversion of plaintiff's car by the fraudulent sale. Of course, no one claims the defendant had authorized O'Brien to attempt to defraud the plaintiff by selling his automobile, pocketing the money and absconding. But he was within the apparent scope of his authority nevertheless.

The rule is stated thus in 2 Am. Jur., Agency, section 363: "* * * the principal * * * is responsible for the fraud of the agent if he has intrusted to the agent a matter which puts the agent in a position to perpetrate the fraud complained of while the agent is executing the agency transaction within the scope of his employment."

This court has made several pronouncements upon the question. In Hopkins v. The Hawkeye Insurance Co., 57 Iowa 203, 208, 10 N.W. 605, 607, 42 Am. Rep. 41, we said: "It is urged by the appellant that it is not liable for the fraudulent acts of the agent.* * * What he did in regard to taking the note was in the direct line of his employment, and his acts in regard thereto must be considered as the acts of his principal." In Mankin v. Mankin, 91 Iowa 406, 407, 59 N.W. 292, is this: "Joseph W. Mankin was bound by the acts of his agent, John Mankin, the same as if he had notice of the fraud." Again, in Wickham v. Evans, 133 Iowa 552, 558, 559, 110 N.W. 1046, 1048, this court said: "Diltz was defendant's agent * * * and as such he perpetrated or attempted to perpetrate a fraud either upon plaintiff or upon his company. * * * This was the fraud of defendant's own agent, and for it the defendant is respon-

sible." In Wright v. Iowa Power & Light Co., 223 Iowa 1192, 1195, 1196, 274 N.W. 892, we quoted with approval from 2 C. J., section 733, page 962, a statement that questions of the nature and scope of the agent's authority and whether the acts in controversy were within the scope of such authority are ordinarily for the jury.

In fact, the question involved at this point is not so much whether the agent was acting within the scope of his authority in converting the plaintiff's automobile, but whether the principal—the defendant—was liable for the tortious act of its agent or employee. Masters, or principals, rarely authorize their servants, employees or agents to commit torts; yet, if in the scope of his employment the master or principal places his employee or agent in a position to . commit a fraud or other tort upon an innocent third party, such master or principal must be held to answer for the damage done, under the maxim of respondeat superior. 2 Am. Jur., Agency, section 359. Here, if it is once found the defendant was the employer of O'Brien, as we have held the trial court had a right to do under the evidence, there is clearly further evidence from which the conclusion was properly drawn that it was liable for his tortious act in converting plaintiff's car. See Grismore v. Consolidated Products Co., 232 Iowa 328, 334, 335, 336, 5 N.W.2d 646; White v. International Textbook Co., 173 Iowa 192, 194, 155 N.W. 298; and Dunshee v. Standard Oil Co., 165 Iowa 625, 630, 146 N.W. 830.

II. We turn then to the third assignment of error, under which the defendant urges that attorney fees incurred in the prior suit are in no event a proper measure of damages. The question seems never to have been squarely decided in Iowa, but there is an abundance of authority in other jurisdictions, all pointing in the same direction. The rule stated in Restatement of the Law, Torts, Volume IV, section 914, is this:

"A person who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover compensation for the reasonably necessary loss of time, attorney fees and other expenditures thereby suffered or incurred."

To the same effect are 15 Am. Jur., Damages, section 144, and 25 C. J. S., Damages, section 50(c).

The defendant urges that attorney fees are not ordinarily allowed, the statutory provisions for costs being deemed sufficient compensation for the victorious litigant; and further that it is only in special cases where the statute specifically authorizes such procedure, or there is malice proven, that the reasonable cost of employing counsel may be taxed against the loser. Boardman v. The Marshalltown Grocery Co., 105 Iowa 445, 451, 75 N.W. 343, cited by defendant, lays down the rule that attorney fees are not ordinarily recoverable as part of the damages against the opposing party in the litigation. This is the general rule; but there are exceptions. Sometimes they are recoverable under special statutes; and they are a part of the damages allowable in certain suits for malicious prosecution.

The present situation comes under none of these exceptions, however. In Kuiken v. Garrett, 243 Iowa 785, 51 N.W.2d 149, we held that attorney fees, growing out of prior forcible entry and detainer litigation between the same parties (forcible entry and detainer actions being an exception to the general rule followed in Iowa denying recovery for malicious prosecution of civil actions) might be recovered upon a showing of malice. From this, defendant argues that, the malice of the agent O'Brien not being imputed to the principal, and there being therefore no showing of malice on the part of the Zip Motors, there can be no recovery.

But defendant overlooks another well-established exception to the rule. If A sues B, generally, as noted above, the successful party cannot recover his expenses of litigation such as lost time, attorney fees, and other special items other than court costs. But if through the tort of A, B is in good faith involved in litigation with C, the exception comes into play, and B may then recover the reasonable value of his expense for employment of counsel, and other proper items, from A. This is the rule laid down in the Restatement of the Law of Torts, and 15 Am. Jur. and 25 C. J. S., all supra. Many state courts have followed this principle.

In Tarnowski v. Resop, 236 Minn. 33, 40, 51 N.W.2d 801, 804, the Minnesota Supreme Court pointed out this difference

between an attempt to recover attorney fees from the other party to the main action and from one who was not a party to the first action but whose tortious conduct caused it. We quote from the opinion: "In this case, defendant was not a party to the suit against the sellers. * * * the attorneys fees and expenses of litigation against the sellers became necessary because of defendant's tortious conduct."

In Indiana National Life Ins. Co. v. Butler, 186 Ky. 81, 215 S.W. 949, an agent of the company had by misrepresentation obtained a promissory note from Butler, which was sold to a bank. The bank brought suit upon the note; Butler attempted to defend upon the ground of the alleged fraud practiced upon him by the insurance company's agent, but after considerable litigation was defeated by the holder of the note. He then brought suit against the insurance company for his damages, including attorney fees, incurred in his litigation with the bank. The fees were held recoverable, the prior litigation having been caused by the wrongful act of another—the life insurance company—through its agent. The qualification that the prior litigation must have been undertaken in good faith is pointed out. The facts in the Kentucky case are very close to those in the one now before us. There, as here, a fraud committed by the agent of the defendant, with no evidence of knowledge on the part of the defendant, brought about litigation between the plaintiff and a third party. The defendant was held liable for attorney fees and other necessary charges and expenses. In First National Bank of Hutchinson v. Williams, 62 Kan. 431, 63 P. 744, it was pointed out that such damages are compensatory rather than exemplary; and with this we agree.

Other cases following the same rule are Wheeler v. Hanson, 161 Mass. 370, 37 N.E. 382, 42 Am. St. Rep. 408; Stiles v. Morse, 233 Mass. 174, 123 N.E. 615, 4 A. L. R. 1365; McGaw v. Acker, Merrall & Condit Co., 111 Md. 153, 73 A. 731, 134 Am. St. Rep. 592; Edwards v. Beard, 211 Ala. 251, 100 So. 101; and International State Bank v. Trinidad Bean & Elevator Co., 79 Colo. 286, 245 P. 489. In fact, Harmont v. Sullivan, 128 Iowa 309, 318, 103 N.W. 951, 954, comes close to supporting the same

point. It appeared that Sullivan had been compelled to bring an action to protect his right to possession of certain real estate which he claimed the plaintiff had leased to him, from others to whom she had leased it. He secured possession and when plaintiff sued for the rent claimed to be due counterclaimed for his expense of securing possession. We said there was evidence of plaintiff's connivance in the wrongful attempt of the third parties to keep Sullivan from possession; and further: "Defendant herein was compelled to bring action to protect his possession, and, if the jury found there was such connivance, defendant was entitled to recover the costs and expenses, including attorney's fees, reasonably expended or incurred as damages for breach of the implied covenant of seisin."

This holding, although the action involved was one to establish the right to possession of real estate, is very close to the rule that a litigant who has through the wrongful act of another been involved in a suit with a third party may in turn recover his necessary costs and expenses, including attorney fees, from the wrongdoer whose misdeed brought about the action. See also Meservey v. Snell, 94 Iowa 222, 226, 62 N.W. 767, 58 Am. St. Rep. 391. It may be noted in passing that the same rule applies to a breach of contract which involves the aggrieved contractor in litigation with a third party. Verhagen v. Platt, 1 N. J. 85, 61 A.2d 892, 895, 4 A. L. R.2d 1309; Williston on Contracts, Revised Ed., section 1354, page 3798; Restatement of the Law, Contracts, section 334.

■ The rule announced and followed here must be limited to third party litigation. In the absence of special statutory provision, attorney fees can be recovered by neither the plaintiff nor the defendant against the other. Section 625.1, Iowa Code of 1954, provides: "Costs shall be recovered by the successful against the losing party." This has always been held to mean the ordinary costs, not including attorney fees. Boardman v. The Marshalltown Grocery Co., supra. The reason for the distinction between attempts to recover attorney fees from the opposing party in a lawsuit, and from one whose wrongful tort or breach of contract has brought about third party litigation, has been said to be that to permit such recovery in the first

case would be to open the door to endless litigation, and further that the statutes providing for taxing of court costs against the loser by implication limit the recovery to such costs; while in the second instance the attorney fees are a natural and direct consequence and damage of the wrongful act which brings about the suit with a third party. Stickney v. Goward, 161 Minn. 457, 201 N.W. 630, 631, 39 A. L. R. 1216; Westfield v. Mayo, 122 Mass. 100, 23 Am. Rep. 292; First National Bank of Hutchinson v. Williams, supra. It matters not whether the litigation with the third party was prosecuted or defended; the only qualifications are that it must have been caused by a tortious act or breach of contract of the defendant in the suit for recovery of fees or other proper expenses and must have been conducted in good faith and with reasonable ground for belief in a successful outcome. We agree with the able trial court that the rule is proper and based on reason and abundant authority.

Appellant urges in argument that it should not be held liable for the attorney fees of the litigation with the Nelsen Company because it was not notified thereof and given an opportunity to defend. There is some authority for this position, Robert A. Reichard, Inc. v. Ezl Dunwoody Co., D.C.E.D. Pa., 45 F. Supp. 153, 157. It has also been criticized as unreasonable, McCormick on Damages, section 68, page 252. We need not decide it. There is no showing in the pleadings, the evidence, the findings of the trial court or elsewhere in the record that the point was raised below. Under such circumstances we do not consider it. Green v. Jones County, 235 Iowa 564, 567, 16 N.W.2d 238.—Affirmed.

All JUSTICES concur.