COMMUNITY SCHOOL DISTRICT OF ELDORA, in the COUNTIES OF HARDIN AND GRUNDY, State of Iowa, Plaintiff,

v.

EMPLOYERS MUTUAL CASUALTY COMPANY OF DES MOINES, Des Moines, Iowa, Johnson Service Company, Des Moines, Iowa, Titus Manufacturing Corporation, Waterloo, Iowa, A. Y. McDonald Mfg. Co., Waterloo, Iowa, Eldora Heating & Supply Co., Eldora, Iowa, The Trane Company, LaCrosse, Wisconsin, Samuel T. Beatty, Trustee in Bankruptcy of Sid Smith & Co., Bankrupt et al., Defendants,

United States of America, Intervenor.

Civ. No. 670.

United States District Court
N. D. Iowa,
Cedar Rapids Division.

June 2, 1961.

John L. Butler (of Lundy, Butler, Lundy & Wilson), Eldora, Iowa, for plaintiff.

D. J. Fairgrave (of Bradshaw, Fowler, Proctor & Fairgrave), Des Moines, Iowa, for defendant, Employers Mut. Cas. Co. of Des Moines.

Frederick G. White, Waterloo, Iowa, for defendant, Johnson Service Co.

Harry M. Reed (of Reed & Holmes), Waterloo, Iowa, for defendant, Titus Mfg. Corp.

Leonard D. Lybbert (of Kildee, Keith, Gallagher & Lybbert), Waterloo, Iowa, for defendant, A. Y. McDonald Mfg. Co.

Carl B. Zimmerman (of Zimmerman & Zimmerman), Waterloo, Iowa, for defendant, Eldora Heating & Supply Co.

Sydney A. Thomas (of Mosier, Mosier, Thomas & Beatty), Waterloo, Iowa, for defendant, the Trane Co.

Upton B. Kepford (of Kennedy, Kepford, Kelsen & Balch), Waterloo, Iowa, for defendant, Samuel T. Beatty, Trustee in Bankruptcy of Sid Smith & Co., Bankrupt.

F. E. Van Alstine, U. S. Dist. Atty., and William R. Crary, Asst. U. S. Dist. Atty., Sioux City, Iowa, for intervenor, United States.

GRAVEN, District Judge.

This is a case involving priority among unpaid materialmen of a contractor, a Federal tax lien, and the claim of the owner of the improved property for attorney fees. The trial was to the Court.

On March 3, 1958, the Community School District of Eldora, an Iowa public school corporation, entered into a contract with Sid Smith & Co., an Iowa corporation. The first corporation will be hereinafter referred to as the Owner and the latter corporation as the Contractor. Under the contract, the Contractor was to furnish all of the materials and perform all of the work in connection with the plumbing, heating and ventilation of an auditorium in a gymnasium addition to be erected for the Owner. The contract price was $53,-500. The work was to be completed on or before November 1, 1958. The contract provided for supervision by an architect. The contract was a standard printed form of contract with blanks provided to be filled in by typewriter. The filled-in words are indicated by underscoring in the paragraphs next set forth. Article 4 of the contract provided as follows:

"Article 4. Progress Payments— The Owner shall make payments on

account of the Contract as provided therein, as follows:

"On or about the 15th day of each month Ninety (90%) per cent of the value, based on the Contract prices of labor and materials incorporated in the work and of materials suitably stored at the site thereof up to the first day of that month, as estimated by the Architect, less the aggregate of previous payments; and upon substantial completion of the entire work, a sum sufficient to increase the total payments to 90% per cent of the Contract price"

Article 5 of the contract provided, in part, as follows:

"Article 5. Acceptance and Final Payment—Final payment shall be due forty (40) days after substantial completion of the work provided the work be then fully completed and the contract fully performed.

"Upon receipt of written notice that the work is ready for final inspection and acceptance, the Architect shall promptly make such inspection, and when he finds the work acceptable under the Contract and the Contract fully performed he shall promptly issue a final certificate, over his own signature, stating that the work provided for in this Contract has been completed and is accepted by him under the terms and conditions thereof, and that the entire balance found to be due the Contractor, and noted in said final certificate, is due and payable.

"Before issuance of final certificate the Contractor shall submit evidence satisfactory to the Architect that all payrolls, material bills, and other indebtedness connected with the work have been paid."

Chapter 573, Code of Iowa 1958, I.C.A., requires that in connection with contracts for public improvements a contractor shall furnish a bond for the protection of those furnishing materials or labor for the improvement which shall be in an amount not less than seventy-five percent of the contract price. In accord with the provisions of that Chapter, the Contractor furnished a combination performance and labor and material payment bond with the defendant, Employers Mutual Casualty Company of Des Moines, as surety in the principal sum of $53,500. That defendant will hereinafter be referred to as the Bonding Company. Section 573.6 of Chapter 573 provides, in part, as follows:

"The following provisions shall be held to be a part of every bond given for the performance of a contract for the construction of a public improvement * * *:

"1. The principal and sureties on this bond hereby agree to pay to all persons, firms, or corporations having contracts directly with the principal * * * all just claims due them for labor performed or materials furnished, in the performance of the contract on account of which this bond is given, when the same are not satisfied out of the portion of the contract price which the public corporation is required to retain until completion of the public improvement * * *."

Chapter 573 provides for the filing of claims with the board of the public corporation by those whose claims for material or labor have not been paid. Section 573.10 of that Chapter provides, in part:

"Claims may be filed * * *

"1. At any time before the expiration of thirty days immediately following the completion and final acceptance of the improvement. * * *"

On February 21, 1958, prior to the time the Contractor entered into the contract herein involved, the Government had made an assessment against the Contractor for unpaid withholding taxes in a substantial amount. At different times thereafter during the year of 1958 and the forepart of the year of

1959, the Government made additional assessments against the Contractor for unpaid withholding taxes. Those assessments became tax liens upon their assessment. The total amount of those liens is much greater than any amounts here in controversy. For convenience in reference, the Government's tax liens will hereinafter be referred to in the singular.

The Contractor proceeded with the performance under his contract with the Owner. Upon approval of and certification by the architect, the Owner paid the Contractor progress payments in the sum of $47,254.57, the last payment of which was made on or about January 22, 1959. The architect has never certified that the improvement has been completed in accord with the provisions of the contract.

On March 4, 1959, the defendant, Johnson Service Company, filed a claim with the Owner for the amount due it for labor and materials furnished for the improvement. During the next few months several other parties who had furnished labor and materials for the improvement, for which they had not been paid, also filed claims with the Owner. The amount of those claims was established at an earlier hearing before this Court. The amounts so established and the dates of the filing of them are as follows:

| | | |
|---|---|---|
| 3/ 4/59 | Johnson Service Company | $4,026.00 |
| 4/16/59 | Titus Manufacturing Corporation | 872.47 |
| 4/28/59 | A. Y. McDonald Mfg. Co. | 3,452.55 |
| 4/29/59 | Eldora Heating & Supply Co. | 181.51 |
| 5/18/59 | The Trane Company | 2,203.45 |

These claims were all filed within the time prescribed by Section 573.10 heretofore referred to.

Sections 573.12, 573.13 and 573.14 of Chapter 573 provide as follows:

"*573.12 Retention from payments on contracts.* Payments made under contracts for the construction of public improvements, unless provided otherwise by law, shall be made on the basis of monthly estimates of labor performed and material delivered; said payments to be made for not more than ninety percent of said estimates and to be so made that at least ten percent of the contract price will remain unpaid at the date of the completion of the contract, anything in the contract to the contrary notwithstanding."

"*573.13 Inviolability and disposition of fund.* No public corporation shall be permitted to plead noncompliance with section 573.12, and the retained percentage of the contract price, which in no case shall be less than ten percent shall constitute a fund for the payment of claims for materials furnished and labor performed on said improvement, and shall be held and disposed of by the public corporation as hereinafter provided."

"*573.14 Retention of unpaid funds.* Said fund shall be retained by the public corporation for a period of thirty days after the completion and final acceptance of the improvement. If at the end of said thirty-day period claims are on file as herein provided the public corporation shall continue to retain from said unpaid funds a sum not less than double the total amount of all claims on file."

Sometime prior to July 13, 1959, the Owner became aware of the tax liens against the Contractor. On July 13, 1959, the Owner commenced an action in equity in the District Court of Iowa in and for Hardin County. It made parties defendant to that action the claimants heretofore referred to, the Bonding Company and the United States of America. It also made parties defendant to that action certain other parties whose relation to the action is not of present significance. In its complaint (petition) in

that action, the Owner alleged the execution of the contract between it and the Contractor and the execution of the bond by the Bonding Company. It further alleged that the claimants heretofore referred to had filed claims with it for labor and materials furnished for the improvement for which they had not been paid. The Owner then alleged as follows in the fourth paragraph of its complaint:

"4th. That this Plaintiff has made certain payments to the said Sid Smith & Co. in accordance with the terms of said contract and upon approval and certification of Brooks-Borg, Architects, in the total amount of $47,254.57, the last of which payments was made on or about January 22nd, 1959, but said contract has not been as yet completed, nor has the architect certified as to the completion thereof; that upon completion of said contract and the certification of such architect there will be owing to the said Sid Smith & Co. the sum of $6,245.43, which sum the Plaintiff deposits herewith with the Clerk of this Court to be paid as the Court may hereinafter determine upon the completion of said contract and certification as above provided; Plaintiff is thereby exposed to multiple and vexatious liability for the same thing; and the Defendants may sue Plaintiff independently and in various jurisdictions."

In the fifth paragraph of its complaint it alleged that the United States of America claimed tax liens upon the balance due the Contractor, and in the sixth paragraph of its complaint it alleged that the claimed liens were junior and inferior to the claims antedating the said liens. In its prayer for relief, the Owner asked that the defendants be enjoined from actions against it; that the defendants be required to assert their various claims solely against the fund paid into court and that it be relieved from further liability to the defendants; that the claims antedating the lien of the United States of America be declared prior and superior thereto; and that judgment be entered against the Bonding Company for any liability of the Owner to the other defendants. The Owner further asked the following relief:

"That the Defendant, Sid Smith & Co. be required to complete the terms and provisions of said contract, or, in lieu thereof, the Defendant Employers Mutual Casualty Company of Des Moines, Iowa, be required to fulfill the terms and provisions of said contract, and upon such completion by either of said Defendants, then the Court enter judgment for the payment of the moneys deposited herewith in accordance with the prayer heretofore made."

The Owner in its complaint did not specifically state whether its action was being brought under any particular rule or rules of the Iowa Rules of Civil Procedure, 58 I.C.A., or any particular Iowa statute or statutes.

Rules 35 and 37 of the Iowa Rules of Civil Procedure provide as follows:

"*35. Right of interpleader.* A person who is or may be exposed to multiple liability or vexatious litigation because of several claims against him for the same thing, may bring an equitable action of interpleader against all such claimants. Their claims or titles need not have a common origin, nor be identical, and may be adverse to, or independent of each other. Such person may dispute his liability, wholly or in part."

"*37. Deposit—discharge.* If a party initiating interpleader admits liability for, or nonownership of, any property or amount involved, the court may order it deposited in court or otherwise preserved, or secured by bond. After such deposit the court, on hearing all parties, may absolve the depositor from obligation to such parties as to the property or amount deposited, before determining the rights of the adverse claimants."

The provisions of the Iowa Rules of Civil Procedure are similar to Rule 22 of the Federal Rules of Civil Procedure, 28 U.S.C.A.

Section 573.16 of Chapter 573 provides, in part:

"The public corporation, the principal contractor, any claimant for labor or material who has filed his claim, or the surety on any bond given for the performance of the contract, may, at any time after the expiration of thirty days, and not later than sixty days, following the completion and final acceptance of said improvement, bring action in equity in the county where the improvement is located to adjudicate all rights to said fund, or to enforce liability on said bond."

Section 573.17 of Chapter 573 provides:

"The official board or officer letting the contract, the principal contractor, all claimants for labor and material who have filed their claim, and the surety on any bond given for the performance of the contract shall be joined as plaintiffs or defendants."

Section 573.18 of that Chapter provides as follows:

"The court shall adjudicate all claims. Payments from said retained percentage, if still in the hands of the public corporation, shall be made in the following order:

"1. Costs of the action.

"2. Claims for labor.

"3. Claims for materials.

"4. Claims of the public corporation."

Section 573.19 of that Chapter provides as follows:

"When the retained percentage aforesaid is insufficient to pay all claims for labor or materials, the court shall, in making distribution under section 573.18, order the claims in each class paid in the order of filing the same."

Section 573.22 of that Chapter provides, in part, as follows:

"If, after the said retained percentage has been applied to the payment of duly filed and established claims, there remain any such claims unpaid in whole or in part, judgment shall be entered for the amount thereof against the principal and sureties on the bond. * * *"

Sometime following the institution of this action, the Contractor was adjudicated a bankrupt, and Samuel T. Beatty, the trustee of its estate in bankruptcy, was substituted for it as a party defendant. Following the service of the notice of the action upon it, the Government removed the action to this Court. Thereafter, the Government filed a motion to dismiss the action as to it for lack of jurisdiction, which motion was sustained. Thereafter, the Government asked and was given leave to file a complaint in intervention. In its complaint in intervention, the Government claimed that its tax liens were prior and superior to the claims of all of the other claimants as to the sum of $6,245.43 which had been retained by the Owner and paid into Court.

The Owner, as heretofore noted, paid into Court the sum of $6,245.43 subject to being reduced by the cost of fully completing the improvement. Under the provisions of Chapter 573, a duty was imposed upon the Owner to retain not less than ten percent of the contract price for the benefit of those claimants who furnished labor and materials for the improvement. The contract price being $53,500, ten percent of that amount would be $5,350. The amount paid into Court is $895.43 in excess of the required ten percent.

On June 20, 1960, several months after the present action was commenced, the United States Supreme Court handed down its decisions in the cases of Aquilino v. United States, 363 U.S. 509, 80 S.Ct. 1277, 4 L.Ed.2d 1365, and United States v. Durham Lumber Co., 363 U.S. 522, 80 S.Ct. 1282, 4 L.Ed.2d 1371. The scope and effect of those cases is discussed by this Court in the case of Randall v. Colby, D.C.1961, 190 F.Supp. 319.

The Court in the cases just referred to recognized the so-called "no property" rule. The teaching of those cases would seem to be that where under the state law the unpaid subcontractors of a tax delinquent contractor have a direct claim against the unpaid balance of the contract price due from the owner, a federal tax lien against the contractor only attaches to the residue or net amount of the unpaid balance to which the contractor would be entitled except for the lien. Under the provisions of Chapter 573, the unpaid claimants here involved had a direct and independent claim to the retained ten percent of the contract price. There was never a time when the Contractor herein had an enforceable claim to that ten percent. The Contractor never had any property in the retained ten percent to which the Government's tax lien could attach. It seems clear that under the decisions in the two cases referred to, the claim of the unpaid claimants here involved as to the retained ten percent, or $5,350, is prior and superior to the Government's tax lien.

It was heretofore noted that the Owner retained the sum of $895.43 in excess of the required ten percent. The Owner, the unpaid claimants, the Government and the Bonding Company make conflicting claims in relation thereto. The conflicting claim of the Owner will first be considered.

The Owner asks that it be allowed the sum of $750.34 for attorney fees and expenses paid by it because of the liens here involved. The reasonableness of the amount claimed is not controverted. That claim of the Owner is based on several grounds. One of those grounds is that the action being in the nature of an action in interpleader, it is entitled to be paid that sum out of the sum paid into Court. The first question that presents itself is the question as to the nature of the present action. It would appear that as commenced in the state court the action was a hybrid action.

Certain allegations of the complaint and certain portions of the relief asked for are characteristic of an interpleader action under the Iowa Rules of Civil Procedure. Other allegations of the complaint and certain portions of the relief asked for are characteristic of an action brought under the provisions of Chapter 573. As heretofore noted, Section 573.16 of that Chapter provides that a public corporation may bring an action in equity to adjudicate matters arising under the provisions of that Chapter. It would seem that the apparent reason for the Owner attempting to make use of the interpleader feature instead of confining the action to matters arising in connection with Chapter 573 was that the Government was claiming a tax lien against any unpaid balance due the Contractor, a matter not within the scope of the action authorized by Chapter 573. Except for the matter of the Government tax lien, the action was typical of an action brought under that Chapter. The Government removed the case to this Court. As heretofore noted, the Government was, on motion by this Court, dismissed as a party defendant for the reason that the Government had not given its consent to being made a party to the interpleader action. See Herter v. Helmsley-Spear, Inc., D.C.1957, 149 F.Supp. 713. After that dismissal, the action was for all practical purposes an action under the provisions of Chapter 573. The Government subsequently intervened in the action to make claim to an unpaid balance due the Contractor. It is doubtful if the intervention of the Government gave the action the status of an action in interpleader. In addition, the Owner asks for relief which could only be given it in an action under Chapter 573.

However, even if it be assumed that the Owner's action had the status of an action in interpleader, the Owner would still encounter difficulty. There are no express provisions in the Federal Rules of Civil Procedure or in the Iowa Rules of Civil Procedure for an allowance of attorney fees in an interpleader action.

In 48 A.L.R.2d 193 (1956), the annotation states the general rule as follows:

"In the absence of statutory provisions governing the question, it would seem to be the rule in the following jurisdictions that a party who is faced with conflicting claims to funds or property in his possession, or has reasonable doubt as to the party entitled thereto, who stands indifferent between the claimants and claims no interest in the funds or property, and who in good faith interpleads the various claimants, is entitled to an allowance for attorneys' fees."

On page 194 of the annotation, many Federal cases are cited as being in accord with the rule stated.

■■ Apparently there are no Iowa decisions involving the question of the allowance of attorney fees in an interpleader action. Adequate provisions for interpleader were not available in Iowa until the Iowa Rules of Civil Procedure became effective on July 4, 1943. See 1 Cook & Loth, Iowa Rules of Civil Procedure 251 (rev. ed. 1951). While, as noted, the Iowa Rules of Civil Procedure relating to interpleader contain no express provision for an allowance of attorney fees to the plaintiff in an interpleader action, it would seem probable that the Iowa Supreme Court when presented with the question would follow the general rule above stated. However, under the general rule, unless the plaintiff bringing an interpleader action has the status of a disinterested stakeholder, no allowance of attorney fees is made to him. See cases cited in 48 A.L.R.2d 214–216 (1956). It would seem that from the relief asked by the Owner in connection with the payment of money into Court it could hardly be considered to be a disinterested stakeholder. However, even if it be assumed that the action is an action in interpleader and that the Owner is a disinterested stakeholder, the Owner would be confronted by another obstacle. Its claim for attorney fees out of the fund in question would be junior and inferior to the claim of the Government under its tax liens. United States v. Liverpool & London & Globe Insurance Co., Ltd., 1955, 348 U.S. 215, 217, 75 S.Ct. 247, 99 L.Ed. 268; United States v. Chapman, 10 Cir., 1960, 281 F.2d 862, 870; Narragansett Bay Gardens, Inc. v. Grant Const. Co., D.C.1959, 176 F.Supp. 451, 455.

■■ The Owner also asks that the attorney fees paid by it be included in the costs taxed in the action. Section 573.18 of Chapter 573 provides that in an action brought under that Chapter the costs of the action are to be paid out of the retained percentage. It is well settled Iowa and Federal law that costs do not include attorney fees unless a statute so provides. See 10 Cyclopedia of Federal Procedure Sec. 38.35 (3d ed. 1952); and Turner v. Zip Motors, Inc., 1954, 245 Iowa 1091, 65 N.W.2d 427, 45 A.L.R.2d 1174. Section 573.21 of Chapter 573 provides as follows:

"The court may tax, as costs, a reasonable attorney fee in favor of any claimant for labor or materials who has, in whole or in part, established his claim."

That Section does not provide for the taxing of an attorney fee in favor of the public corporation.

■ The Owner also asks judgment against the Contractor and the Bonding Company for attorney fees based on the following provision of the "General Conditions of the Contract for Construction of Buildings" which, by reference, was incorporated into and made a part of the contract between the Contractor and the Owner.

"Neither the final payment nor any part of the retained percentage shall become due until the Contractor, if required, shall deliver to the Owner a complete release of all liens arising out of this Contract, or receipts in full in lieu thereof, and, if required in either case, an affidavit that so far as he has knowledge or information the releases and receipts include all the labor and material for which a lien could be filed;

but the Contractor may, if any subcontractor refuses to furnish a release or receipt in full, furnish a bond satisfactory to the Owner, to indemnify him against any lien. If any lien remain unsatisfied after all payments are made, the Contractor shall refund to the Owner all moneys that the latter may be compelled to pay in discharging such a lien, including all costs and a reasonable attorney's fee."

The Owner relies upon the last sentence of that provision for its claim for attorney fees. That sentence would not seem to be applicable to the present situation. The Owner has not been compelled to make payment of any lien for which the Contractor is in duty to make refund.

It is the ruling and holding of the Court that the Owner is not entitled to any allowance of attorney fees out of the fund paid into Court. It is the further ruling and holding of the Court that the Owner is not entitled to judgment against the Contractor or the Bonding Company for the attorney fees paid by it.

 There is still left for consideration the conflicting claims to the sum of $895.43 heretofore referred to. In its complaint the Owner alleged that the Contractor had not fully completed the improvement. It asked that the Contractor or the Bonding Company complete the contract according to the terms and provisions of the contract. It seems clear that the Owner would be entitled to be paid out of the unpaid balance of the contract price its damages for a breach or breaches of contract by the Contractor ahead of any tax lien of the Government against the Contractor. Wolverine Insurance Co. v. Phillips, D.C. 1958, 165 F.Supp. 335, 355, appeal dismissed 8 Cir., 1960, 283 F.2d 518. At the trial, the Owner offered no evidence as to what amount would be necessary to complete the improvement according to the terms and provisions of the contract. It is the view of the Court that, by failing to offer evidence in support of its alleged claim, it has no claim against the fund in question. The improvement must now be regarded as completed so far as the Owner is concerned.

 It seems clear that if an owner's property is subject to liens or claims growing out of a construction contract because of the failure of the contractor to pay for materials and labor going into the improvement, he may use the balance unpaid upon the contract to pay off and discharge such liens. Randall v. Colby, D.C.1961, 190 F.Supp. 319. In the present case, the property of the Owner being public property, no lien can attach to it. Cities Service Oil Co. v. Longerbone, 1942, 232 Iowa 850, 6 N.W. 2d 325, 327. Therefore, in the present case, the Owner has no claim against the fund in question. The Owner in the present case, like the United States Government in the case of United States v. Munsey Trust Co., 1947, 332 U.S. 234, 67 S.Ct. 1599, 91 L.Ed. 2022, because of its governmental immunity from lien claims, suffered no loss because of the failure of the Contractor to pay those who furnished materials and labor for the improvement.

In the present case the Contractor, under the provisions of his contract, would be entitled to the final payment upon final acceptance following the certificate by the architect that the work had been completed. Before issuance of the certificate, the Contractor was required to submit evidence satisfactory to the architect that all indebtedness connected with the work had been paid. It was heretofore noted that no certificate has ever been issued certifying that the improvement had been completed. It was also heretofore noted that the improvement must now be regarded as being completed.

There is still to be considered the conflicting claims of the Bonding Company, the unpaid claimants, and the Government tax lien as to the amount of the unpaid balance exceeding the required ten percent. The Bonding Company asserts priority as to that sum over the Government tax liens by virtue of an

assignment from the Contractor. The bond application by the Contractor to the Bonding Company executed March 3, 1958, contained an assignment by the Contractor to the Bonding Company of all amounts to become due it under the contract as security for any liabilities incurred by the Bonding Company under the bond.

 The Bonding Company has made payments to those who furnished labor and materials for the improvement, and who were not paid by the Contractor, in excess of the amounts here involved. The assignment by the Contractor was to secure the Bonding Company against future liability. An assignment to secure against future liability will not prevail against a Government tax lien. United States v. R. F. Ball Construction Co., Inc., 1958, 355 U.S. 587, 78 S.Ct. 442, 2 L.Ed.2d 510. This Court discussed that case in Randall v. Colby, 1961, 190 F.Supp. 319, 338 et seq. It seems clear that the claim of the Bonding Company to the unpaid balance of the contract price under its assignment is inferior to the claim of the Government under its tax lien.

 In the case of Randall v. Colby, supra, this Court stated (at page 335) its view as to the present state of the law in regard to the status of a Federal tax lien in connection with the unpaid balance of the contract price for the construction of an improvement as follows:

"It seems clear that under the Federal law once a right arises in favor of a contractor against whom a Federal tax lien is outstanding to a portion of the contract price, the tax lien attaches to that portion immediately. It would also seem clear that once a Federal tax lien has attached to such a portion it is no longer a part of the balance 'due' the contractor but is 'due' to the Government. Under the rule of the Aquilino and Durham cases, in order for a Federal tax lien against a contractor to attach to the contract price there must have been a time at which the owner is not entitled to take credit on the contract price for the claims of the subcontractors. On the other hand, if there was a time when the owner was not entitled to take credit for claims of subcontractors out of the contract price and the contractor against whom a tax lien was outstanding would have had the right, save for the tax lien, to demand and receive payment of the balance of the contract price, then the tax lien would attach to the balance due on the contract price."

In order for the Government's tax lien to attach to the unpaid balance here involved, there must have been a time after the lien came into existence when the balance, or a portion thereof, was due the Contractor and could have been paid by the Owner to the Contractor, save for the tax lien, without incurring liability for so doing.

 It is the claim of certain of the defendants that the amount in question never has become due because of Article 32 of "General Conditions of the Contract for Construction of Buildings" which is incorporated by reference in the contract between the Owner and the Contractor and provides, in part, as follows:

"Neither the final payment nor any part of the retained percentage shall become due until the contractor, if requested, shall deliver a complete release of all liens arising out of this contract. * * *"

It is clear that the Contractor, because of its bankrupt condition, cannot itself ever deliver a complete release of all liens arising under the contract. Therefore, if the Owner "requested" such releases it could prima facie result in the situation that the balance of the contract price in question never would become due. However, in the present case the Owner paid the amount in question into Court as the balance remaining unpaid under the contract for disposition by Court. The payment into Court of the unpaid

balance of the contract price is inconsistent with the theory that the complete release of all liens was a condition precedent to the Owner's liability for such balance. The payment into Court of that balance would seem to constitute a waiver by the Owner of the provisions of the contract referred to. The Owner failed to make any showing as to the amount required to remedy the claimed breach or breaches of contract on the part of the Contractor. Upon the failure of the Owner to do so, the unpaid balance then became due so far as the Owner was concerned. The pivotal question is whether at the time it became due the Contractor was entitled to it, save for the Government tax lien.

In the case of United States v. Durham Lumber Co., supra, the Court stated (at page 526 of 363 U.S., at page 1284 of 80 S.Ct.):

"The Court of Appeals was correct in asserting that the Government's tax lien attached to the taxpayers' property interests in the fund as defined by North Carolina law. * * *"

It is necessary to ascertain what interests the different parties in the present action have to the unpaid balance in question under the Iowa law. The rights of those parties are defined by the provisions of Chapter 573 and the decisions of the Iowa Supreme Court interpreting those provisions.

█ In the present case, the Owner has retained the sum of $895.43 in excess of the ten percent required by Chapter 573. The unpaid claimants have claims on file in excess of the ten percent. It developed during the litigation that the Owner had no claim against such excess. The question is, when it so developed, was that excess due the Contractor and could the Owner, apart from the Government tax lien, pay the excess to the Contractor without incurring liability to the unpaid claimants?

Section 573.25 of Chapter 573 provides as follows:

"The filing of any claim shall not work the withholding of any funds from the contractor except the retained percentage, as provided in this chapter."

There are two Iowa cases which are of importance. They are the cases of Hercules Mfg. Co. v. Burch, 1944, 235 Iowa 568, 16 N.W.2d 350, and Sinclair Refining Co. v. Burch, 1944, 235 Iowa 594, 16 N.W.2d 359. The former case was commented on in 30 Iowa Law Review 568 (1945). They both involved actions brought under what is now Chapter 573. In the case of Hercules Mfg. Co. v. Burch, supra, the contractor had made an assignment to a bank of the amount which would become due him under a construction contract with the Iowa State Highway Commission. The contractor failed to pay a number of those who had furnished labor or materials for the project. Those claimants filed claims with the Commission. The contractor completed the project. The Highway Commission had retained not only ten percent of the contract price but also retained a sum in excess of that amount. The surety on the contractor's bond paid the unpaid claimants and became their assignee and subrogee. The case involved the conflicting claims of the bank, as assignee of the contractor, and the surety company, as the assignee and subrogee of the unpaid claimants, to the amount retained by the Highway Commission in excess of the required ten percent. The Iowa Supreme Court stated (at page 352 of 16 N.W.2d):

"* * * The lower court held that claimants for labor and material and the surety as their assignee and subrogee had no right to any part of the contract price except the 10 per cent retention fund and awarded the amount in controversy to the bank. The surety has appealed. We think the trial court was right."

The holding in the case of Sinclair Refining Company v. Burch, supra, is in accord. Under the doctrine of those cases, where an owner retains an amount in

excess of the ten percent required to be retained under Chapter 573, the contractor, upon completion of the improvement, is entitled to such excess even though there are unpaid claims on file for labor and materials furnished for the improvement and if the contractor has made an assignment which includes that excess the assignee is entitled to such excess ahead of the unpaid claimants.

 When a Government tax lien comes into existence against a taxpayer, it becomes a lien on all causes of action which the taxpayer can assert against other persons. See cases cited in Randall v. Colby, D.C.1961, 190 F.Supp. 319, 327. Such a lien operates as an assignment of such causes of action to the Government. In the present case, the Government's tax lien made it the assignee of any claim that the Contractor might have for the balance of the contract price. As such assignee, its situation is similar to that of the assignee of the contractor in the cases of Hercules Mfg. Co. v. Burch and Sinclair Refining Co. v. Burch, supra.

It seems clear that under the Iowa law the claim of the Government as a tax lien assignee of the Contractor to the excess of $895.43 is prior and superior to the claims of the unpaid claimants and the Bonding Company. It also seems clear that when it developed that the Owner had no claim against that excess it then became due to the Contractor and also thereupon became due the Government under its tax lien.

The Court holds as follows:

(1) that the required ten percent, or the sum of $5,350, is due to the unpaid claimants.

(2) that the $895.43 in excess of that ten percent is due the Government under its tax lien.

(3) that the Owner has no claim against either the said ten percent or the excess.

(4) that the Owner is not entitled to be awarded or to recover the attorney fees and expenses claimed by it.

(5) that the Owner is free from any liability to any and all of the defendants and to the Intervenor.

It Is Ordered that judgment be entered accordingly.

Some of the more recent literature relating to some of the matters here involved is Plumb, Federal Tax Liens, 47 A.B.A. Journal 455 (May 1961); Final Report of American Bar Association Committee on Federal Liens (1959); Myers, The Fall and Rise of The Security Interest, 6 Practical Lawyer 60–78 (December 1960); McNamara, The Surety and Federal Tax Liens, 28 Insurance Counsel Journal 92 (January 1961); and Comment, 46 Iowa Law Review 666 (1961).

This opinion shall constitute the Findings of Fact and Conclusions of Law under Rule 52(a) of the Federal Rules of Civil Procedure.